112 So.2d 623

**Wilda Lee Soileau TOLER, Individually and as Natural Tutrix,**

v.

**ALL AMERICAN ASSURANCE COMPANY of Louisiana.**

No. 43837.

June 1, 1959.

Rehearing Denied June 25, 1959.

C. Kenneth Deshotel, Opelousas, for appellant.

Voorhies, Labbé, Voorhies, Fontenot & Leonard, Lafayette, for defendant-appellee.

HAWTHORNE, Justice.

Wilda Lee Soileau Toler, individually and as natural tutrix of the minors Thomas M. Toler III, Jerry Christopher Toler, Craig S. Toler, and Barbara Lee Toler, beneficiaries named in an insurance policy, instituted this suit against the All American Assurance Company of Louisiana seeking a judgment of $50,000. Mrs. Toler contends that the defendant insurance company is indebted to them in this amount under the provisions of an insurance policy issued on the life of Thomas Maxwell Toler, Jr., bearing No. 11,360, dated December 8, 1955, for the face amount of $25,000 with an additional accidental death benefit, commonly referred to as a double indemnity provision, of $25,000. After trial on the merits there was judgment in favor of plaintiff for $25,-000, the face amount of the policy, with 6 per cent per annum interest from December 17, 1956, until paid, and for all costs, and the clerk of court was ordered to pay to the attorneys for plaintiff the sum of $25,000 which had been deposited in the registry of the court by defendant. The demand of plaintiff for an additional $25,000 under the double indemnity provision of the policy was denied. Plaintiff appealed asking a reversal of the judgment insofar as it denied recovery under the double indemnity provision. The defendant insurance company has answered the appeal praying that the judgment be set aside only so far as it

condemned defendant to pay interest and costs.

The insured, Dr. Thomas Maxwell Toler, Jr., was killed in November, 1956, in the crash of a private airplane of which he was the pilot and owner. In 1955 Dr. Toler made application to the defendant insurance company for life insurance of $55,000 with additional provisions of disability and accidental death benefits. This application contained the question: "Have you ever been a pilot or other member of the crew of any type of aircraft or do you contemplate becoming such (if yes give details)?" The insured answered that he had a private pilot's license and flew approximately 200 hours a year. There appears on this application, for home office endorsement only, the following: "$3.75 per M rate up for aviation. Correct total premium is $795.40. Two separate policies have been made, one for $25,000.00 with DI [double indemnity] and one for $30,000.00." Pursuant to this application the two policies of insurance were issued, one for $30,000.00 without double indemnity and the other, on which the instant suit was filed, for $25,000. The application is attached to and made part of both policies.

The policy sued on contains an endorsement or rider providing that the insurance company would pay to the beneficiary an additional amount "of $25,000.00 upon receipt * * * of due proof (1) that the Insured's death resulted from bodily injury caused solely by external, violent, and accidental means and independently of all other causes * * *". This rider further provides under "Risks Not Assumed": "Under this provision for Accidental Death Benefit, the Company does not assume the risk of death * * * from any of the following causes: * * * operating, riding in, or descending from, any kind of aircraft, except riding as a fare-paying passenger * * * in a licensed passenger aircraft provided by incorporated passenger carrier on a scheduled passenger air service regularly offered over an established passenger route."

It will thus be seen that the insured was not covered under the accidental death benefit in the event his death was caused from operating, riding in, or descending from a private airplane. This policy, however, has attached to and made part of it an endorsement dated December 8, 1955, which provides:

"This policy issued in consideration of an extra annual premium of $3.75 per thousand, due to aviation, and is included in the premiums shown on the face of this policy."

The annual premium shown on the face of the policy is $382.

It is the position of appellant that the endorsement dated December 8, 1955, which we have quoted above, is clear and explicit, and that by this endorsement the parties

to the contract intended to delete the aviation exclusion clause of the accidental death benefit, since the endorsement "specifically provided that an extra annual premium would be paid because of the aviation activities of the insured". Appellant further argues, however, that if the court should find this endorsement to be ambiguous, the ambiguity should be construed against the insurer and for the benefit of the insured.

Appellee, on the other hand, denies liability under the double indemnity provision of the policy because of the stipulation therein that the risk of death caused by operating, riding in, or descending from a private plane is a risk not assumed but one expressly excluded. Appellee states that because the insured in his application declared he was a private pilot flying 200 hours a year, it took cognizance of this increased hazard, and that the basic life portion of the policy would have been issued with an aviation exclusion had the insured not agreed to pay an extra premium of $3.75 per thousand. In other words, appellee says that because of the insured's flying activities this $3.75 per thousand was an additional premium on the life provision of the policy; hence the endorsement.

As we view the matter, the endorsement providing for an extra annual premium of $3.75 per thousand is ambiguous. This endorsement states that the extra premium is "due to aviation, and is included in the premiums shown on the face of this policy".

The face of the policy gives the total annual premium, which includes the premium for the basic life insurance and also the premium for the accidental death benefit, but the premium charge for these separate benefits is not disclosed by the policy. Under these circumstances we cannot, from the endorsement alone, determine whether the additional premium was intended to remove from the accidental death benefit provisions of the policy the aviation risk not assumed, or whether this premium represented only an increase of rate on the basic life portion of the policy because of the insured's activities in aviation.

Under the provisions of the accidental death benefit as set out in the policy the insurance company would not be liable in the instant case for the accidental death benefit because the death of the insured occurred in the crash of a private aircraft, and death from such a cause is one of the risks not assumed. The question presented, then, is whether the rider on the policy providing for an extra premium of $3.75 per thousand "due to aviation" was intended by the parties to this contract to delete from the provisions of the accidental death benefit the risk not assumed insofar as it pertained to the operation of a private passenger plane.

In Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, 113, this court had occasion to discuss the rules of law

applicable to the interpretation of an insurance contract. In that case we stated:

"An insurance policy is a contract under the law and the rules established by our LSA–Civil Code for the interpretation of agreements are applicable. See Article 1945 et seq. Accordingly, if the words of the policy are clear and express the intent of the parties, the agreement is to be enforced as written. LSA–Civil Code Articles 1901 and 1945. But, if there is any ambiguity or doubt, the court must endeavor to ascertain the common intention of the parties by reference to other phrases or words of the agreement or by other similar contracts of the parties, Articles 1948, 1949 and 1950, LSA–Civil Code, bearing in mind that, if a clause or word is susceptible of more than one interpretation, it is to be understood in the sense that would make the obligation effective, Article 1951, LSA–Civil Code, and, additionally that doubtful language is to be construed against him who has contracted the obligation. Article 1957, LSA–Civil Code. Our law, therefore, conformable with the universal rule applicable to contracts of insurance, is that all ambiguities must be construed in favor of the insured and against the insurer. See Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Hemel v. State Farm Mut. Auto Ins. Co., 211 La. 95, 29 So.2d 483; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 and Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777."

Article 1949 of our Civil Code, which is particularly pertinent in the present case, provides:

"When there is anything doubtful in one contract, it may be explained by referring to other contracts or agreements made on the same subject between the same parties, before or after the agreement in question."

As we have pointed out, the insured made application for $55,000 of life insurance, and pursuant to this application two policies of insurance were issued, one for $30,000 and one for $25,000. The application of the insured is attached to and made part of both these policies. The $30,000 policy does not provide for double indemnity in the event of accidental death, but the $25,000 policy, as stated, does contain this benefit. In spite of the fact that the $30,000 policy contains no provision for accidental death benefit, it has the same endorsement as the $25,000 policy—that is, it provides that it is issued for an extra annual premium of $3.75 per thousand "due to aviation" and that this amount is included in the premiums shown on the face of the policy. In addition to these two policies there were offered in evidence in this case five life insurance policies which had been issued by the defendant to the deceased, none of which contains a double indemnity provision but in each of which an extra

premium is charged, as shown by endorsement thereon, for the basic life coverage because of the aviation hazard as it affects the life portion of the policy.

█ Counsel for the appellant objected to the introduction of any policy except the one on which this suit was based. The trial judge, however, admitted them under the provisions of Article 1949 of the Civil Code, quoted above, and we think it was proper for him to do so.

█ All of these insurance contracts are between the same parties and on the same subject, and show beyond question that the additional premium paid by the insured was not an additional premium paid for the purpose of removing from the accidental death benefit provisions of the policy the risk not assumed. This is evidenced by the fact that an additional premium was charged to this insured in each of the other policies on account of aviation activities although these policies did not contain a double indemnity or accidental death benefit provision. In other words, the fact that such an additional premium was charged to this insured in these other contracts removes any doubt that the rider on the policy sued on had any connection with the double indemnity provision of the contract, and it is therefore clear that the contracting parties had no intention that the additional premium for the policy sued on was to have any effect on the accidental death benefit provisions of that policy.

Let us now consider appellee's answer to the appeal seeking a reversal of the judgment insofar as it condemns it to pay interest and costs.

R.S. 22:656 provides:

"All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days from the date of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six per cent per annum from date of receipt of due proof of death by the insurer until paid."

In the instant case proof of death was received by the defendant insurance company on December 17, 1956. In January the attorneys for plaintiff informed the insurance company that Mrs. Toler, widow of the deceased, had been appointed administratrix of the deceased's estate and tutrix of their minor children. The insurance company requested certified copies of letters of administration and tutorship, which were mailed to the insurance company on January 17, 1957. On February 25 the company wrote plaintiff's attorneys that it stood ready to pay the proceeds of the policy to the beneficiaries exclusive of double indemnity, and that a check would be forthcoming at their request. On March 3 the instant

suit was filed. On April 12 the insurance company informed the attorneys that it was ready to pay the $25,000 face amount of the policy. Plaintiff's attorneys refused to accept this offer unless 6 per cent interest was paid on this amount, but the insurance company refused to pay interest. Some five months after the suit was filed, the insurance company deposited the face amount of the policy, $25,000, in the registry of the court.

The statute clearly provides that the 60-day period shall run from "the date of receipt of due proof of death". In the instant case proof of death was received by the company on December 17, 1956, and consequently the 60-day period expired about the middle of February, 1957. Within this period letters of tutorship and administration were sent to the insurance company at its request, and after receipt of these documents around January 17, the company still had about 30 days of the 60-day period in which to pay the face amount of the policy, but it did not do so. Its argument is untenable that the 60-day period provided in the statute did not begin to run until the letters of administration and tutorship were received. Moreover, its letter offering to pay the face amount of the policy was written after the 60-day period had expired. In short, after the company had received due proof of death and the letters of administration and tutorship, there was no justification for it to refuse to pay the face amount of the policy, all of these documents having been timely received within the 60-day period. Furthermore, its deposit of the face amount of the policy in the registry of the court after suit was instituted will not, under such circumstances, relieve it of the payment of interest.

For the reasons assigned the judgment appealed from is affirmed, appellee to pay all costs.

FOURNET, C. J., recused.

PONDER, J., absent.