659 F.2d 1314
 9 Fed. R. Evid. Serv. 336
 MISSISSIPPI RIVER GRAIN ELEVATOR, INC. and Inter Financing
Exchange, S.A., Plaintiffs-Appellants Cross Appellees,
Ferruzzi, S.P.A., Counter Defendant-Appellant, Cross Appellee,
v.
BARTLETT & COMPANY, GRAIN, Defendant-Counter
Plaintiff-Appellee Cross Appellant.
 No. 80-3344.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A*
 Oct. 26, 1981.
 William W. Miles, Metairie, La., for plaintiffs-appellants cross appellees.
 Deutsch, Kerrigan & Stiles, Robert L. Redfearn, Thomas J. Fischer, New Orleans, La., for defendant-counter plaintiff-appellee cross appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Invoking diversity jurisdiction and alleging breach of contract, Mississippi River Grain Elevator, Inc. (MRGE) and Inter Financing Exchange, S.A. (IFE) sued Bartlett & Company, Grain (Bartlett). Bartlett answered and counterclaimed. Subsequently Bartlett amended its counterclaim to add Giovanni Rametta, Ferruzzi & Co., S.A.,[1] Financing Grain Export, S.A., Storken & Co., Societe Pour le Commerce de Cereals, and Ocean Grain and Seeds Trading Co., S.A., as defendants. The defendants in counterclaim are referred to in this litigation as the "Ferruzzi Group."
 
 
 2
 Default judgments were entered against Financing, Storken, Societe, and Ocean Grain. MRGE voluntarily dismissed its complaint against Bartlett. IFE's claim against Bartlett and Bartlett's counterclaim against the Ferruzzi Group were presented in a bench trial before Judge Blake West. Judge West died shortly after the trial and the case was assigned to another judge who gave the parties the option of retrial or submission on the record. The decision of the parties is reflected in the order assigning the case to a magistrate: "The parties have agreed to submit to Magistrate James Carriere the captioned matter for decision on the basis of the trial transcript, record and memoranda. The parties have agreed to accept the decision of the Magistrate as the decision of the Court." The district court adopted, with minor modifications, the findings and recommendations of the magistrate. IFE was awarded judgment against Bartlett for $21,637.17. Bartlett was successful in its counterclaim against the Ferruzzi Group for shortweighing losses and expenses incidental to contract breaches; its claims for lost profits and for loan grain discrepancy were denied.
 
 Background Facts
 
 3
 In 1968 Bartlett, a trader in grain, began contracting with MRGE for the sale of grain. In January 1973 Bartlett began exporting grain through MRGE pursuant to a "total ship loan service" contract. Under that agreement Giovanni Rametta, the chief operating officer of MRGE, selected a member of the Ferruzzi Group to purchase grain from Bartlett. The grain would be shipped through MRGE's elevator, loaded on ocean-going vessels, and repurchased by Bartlett.[2] For this service Bartlett paid the difference between the CIF price of grain loaded on a barge in New Orleans and the FOB price of such grain loaded on an ocean-going vessel at New Orleans a differential of 7 to 15 cents per bushel.
 
 
 4
 In September, 1973 the parties negotiated three changes in their standard agreement which were confirmed by a telex from Bartlett to Rametta. It was agreed that Bartlett's per bushel cost would be fixed at 81/2 cents, that Bartlett would commit to use MRGE's services for eight months and would "put through" 20,000 long tons of grain each month. Bartlett reserved the right to "put through" an additional 10,000 long tons of grain per month. Almost immediately after this contract became effective, a dispute arose as to which party was responsible for incidental expenses, such as inspection and demurrage. This disagreement, combined with Bartlett's dissatisfaction with what it viewed as MRGE's unjustifiable delays in handling the grain, finally resulted, in 1974, in Bartlett's termination of trading.
 
 Standard of Review
 
 5
 The Ferruzzi Group challenges the factual findings of the special master as being based, in part, on credibility evaluations although the special master did not see and hear the witnesses. MRGE insists that the district judge's review of the special master's findings was inadequate, arguing that Calderon v. Waco Lighthouse For The Blind, 630 F.2d 352 (5th Cir. 1980), requires a de novo determination of the facts.
 
 
 6
 In Calderon the claimant alleged that he lost his job because of his Mexican-American descent. The matter was referred to a magistrate for trial under 28 U.S.C. § 636(b)(3). The district court adopted the magistrate's recommendations over objection by the appellant. We reversed, holding that the district judge must make a de novo determination of all contested portions of the magistrate's findings. Calderon is not dispositive of the issue now before us for two reasons.
 
 
 7
 First, the referral in the case at bar was under 28 U.S.C. § 636(b)(2), and not section 636(b)(3). Although the text of both sections are similar, we discerned a difference in Calderon.[3]
 
 
 8
 Second, and equally persuasive, is the fact that the parties before us were offered alternatives and elected to submit the matter for decision by a magistrate as a special master. It was agreed that the decision would be based on the "trial transcript, record and memoranda," and that the parties would "accept the decision of the Magistrate as the decision of the Court." Finally, the court specially noted that the "matter will be treated by the court as a reference to a special master pursuant to Rule 53(e)(4) of the Federal Rules of Civil Procedure." Under these circumstances we find both the language and the rationale of Rule 53(e)(4) of the Federal Rules of Civil Procedure applicable: "when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered." The reference to the special master and the treatment accorded his findings and recommendations are consistent with the law and the agreement of the parties. We find no merit in MRGE's contention that the case should be remanded to the district court for a de novo examination of the facts.
 
 Assignments of Error
 
 9
 The parties, both appearing as appellants, assign six errors: (1) the determination that MRGE was an alter ego of the Ferruzzi Group; (2) the determination that the September 1973 agreement was a continuation of earlier buy/sell contracts; (3) application of the wrong legal standard in assessing fraud in the shortweighing of Bartlett's grain; (4) improper admission of weight certificates offered by Bartlett to prove shortweighing; (5) the refusal to bar Bartlett's claims by operation of the Louisiana law on prescription (limitations); and (6) the rejection of Bartlett's prayer for lost profits and the awarding of a money judgment to IFE.
 
 1. MRGE as Ferruzzi's Alter Ego
 
 10
 While MRGE, IFE, and the other members of the Ferruzzi Group are discrete corporations, they were found to be so centrally managed and interrelated that they functioned, at all pertinent times, as mere instrumentalities of each other. Viewing the record in light of applicable Louisiana law, see, e. g., Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); National Surety Corp. v. Pope, 147 So.2d 239 (La.App.1962), satisfies us that this categorization should not be disturbed. We find no error in the conclusion that each member of the Ferruzzi Group is liable in solido to Bartlett, as the alter ego of the others.
 
 2. The 1973 Agreement
 
 11
 The September 1973 telex from Bartlett to MRGE did not specify the allocation of responsibility for the expenses incidental to the grain shipments. Bartlett, having paid charges for demurrage, inspection and storage totaling $138,190.18, contends that the telex served only to modify the existing buy/sell agreements under which MRGE was responsible for these costs. The district court agreed, reasoning that the telex supplemented the prior contracts by setting a fixed price per bushel, a minimum quantity of grain to be shipped, and a time period within which the shipments were to be made.
 
 
 12
 Reviewing this record under the lamp of Louisiana law,[4] we perceive no error in this conclusion. In certain circumstances a contract is properly interpreted by examining similar agreements or a prior course of transactions between the parties. See, e. g., Toler v. All American Assurance Co., 237 La. 815, 112 So.2d 623 (1959); Finkel v. Texas-Edwards, Inc., 295 So.2d 903 (La.App.1974).
 
 3. Proof of Fraud
 
 13
 The district court concluded Bartlett proved, by a preponderance of the evidence, that the Ferruzzi Group carried out a fraudulent shortweighing scheme. MRGE contends the court erred by using the preponderance of the evidence standard, insisting that under Louisiana law fraud must be proved by clear and convincing proof.[5] Substantial authority exists for the proposition that under Louisiana Civil Code articles 1847 and 1848,[6] proof of fraud requires more than a mere preponderance of the evidence. See, e. g., Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953); Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1953); Guillot v. Spencer Business College, Inc., 267 So.2d 738 (La.App.1972); George A. Broas Co., Inc. v. Hibernia Homestead & Savings Ass'n, 134 So.2d 356 (La.App.1961). These decisions address the issues of contractual fraud in inducement or fraud in the factum. Bartlett's fraud claim differs. Misrepresentations are not alleged; Bartlett alleges breach of contract by conduct in the nature of theft. The claim is straightforward and precise: Bartlett grain was intentionally shortweighed by the Ferruzzi Group for its own advantage.
 
 
 14
 The essential issue is not fraud but breach of contract. Shortweighing could be the product of negligence or design; Bartlett maintained that it was by design, i. e., by fraud. The allegation may be inartfully drafted, but the legal question is clear was there a performance or a breach of performance of the contractual obligation due Bartlett? The district court, applying the usual preponderance of the evidence test, attributed responsibility for the shrinkage in grain to the Ferruzzi Group. See Circle Food Stores, Inc. v. Gabriel, 331 So.2d 57 (La.App.1976). No error was committed in the assessment of this burden of proof.
 
 4. Certificates of Weight
 
 15
 In support of its claim of systematic shortweighing, Bartlett tendered origin weight certificates prepared by the Kansas State Grain Inspection Department, Nebraska City Chamber of Commerce, and the St. Joseph Grain Elevator. The certificates were admitted, over objection, to prove the truth of their contents.[7]
 
 
 16
 MRGE argues that the district court erred because the weight certificates in question were not prepared by Bartlett and, thus, the documents were not properly admissible to prove the truth of their contents under Rule 803(6) of the Federal Rules of Evidence.[8] MRGE assigns an overly restricted construction to Rule 803(6), one we rejected in United States v. Veytia-Bravo, 603 F.2d 1187, 1191-92 (5th Cir. 1979), cert. denied, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980): "Rule 803(6) does not require that the records be prepared by the business which has custody of them. Where circumstances indicate that the records are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation." (Emphasis added.) The issue of admissibility under Rule 803(6) is chiefly a matter of trustworthiness. In this inquiry the trial court is given great latitude. See, e. g., United States v. Verlin, 466 F.Supp. 155 (N.D.Tex.1979). Error was not committed by the admission of these certificates.
 
 5. Time Limitations
 
 17
 MRGE contends that Bartlett's right to recover for the alleged shortweighing has been extinguished by the operation of the Louisiana provisions governing prescription liberandi causa. See La.Civ.Code art. 2130. MRGE claims the applicable limitations period is one year under Civil Code articles 3536[9] or 3537,[10] as an action sounding in tort.
 
 
 18
 The district court rejected the defense of prescription, noting that Bartlett's action was premised on unjust enrichment which admits of a ten year period in which to commence suit. La.Civ.Code art. 3544; Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).[11] Bartlett's answer and counterclaim leave little room for doubt that its demands are grounded in contract. Bartlett bargained for certain grain related services, including weighing, which were not performed satisfactorily. Shortweighing is a complaint premised on a contractual obligation owed to Bartlett by MRGE and the Ferruzzi Group. Simply because Bartlett could have filed an action ex delicto does not preclude a suit ex contractu. See, e. g., Dantagnan v. I.L.A. Local 1418, 496 F.2d 400 (5th Cir. 1974); Federal Ins. Co. v. Insurance Co. of North America, 262 La. 509, 263 So.2d 871 (1972); Distefano v. Michiels, 158 La. 885, 104 So. 914 (1925); Illinois Central R.R. Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738 (1918); Brooks v. Robinson, 163 So.2d 186 (La.App.1964). MRGE's defense of prescription is devoid of merit; the suit was timely filed. La.Civ.Code art. 3544.
 
 6. Lost Profits
 
 19
 Bartlett sought recovery for lost profits resulting from the breach of the telex supplemented agreement. The trial court found that the conditions of which Bartlett complained (delays in handling grain and dispute over responsibility for various expenses)[12] did not prevent the "putting through" of the promised amount of grain. Bartlett now contends that the district court's reasoning relegated it to a position from which it was forced to continue doing business, endure poor service, and incur substantial expenses without legal recourse. We cannot accept Bartlett's portrayal of the district court's ruling.
 
 
 20
 Under Louisiana law, damages such as lost profits are recoverable from the time the debtor has been "put in default." La.Civ.Code art. 1933. This rule prevails, with several exceptions not presently relevant, when the contractual breach is only passive. See, e. g., Andrew Dev. Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977). A putting in default requires notice to the other party of the alleged contractual breach and the allowance of a reasonable opportunity to perform. We find no evidence of either in this record. We perceive inherent in the trial court's recitation that Bartlett was not prevented from "putting through" the grain, a finding of a passive breach only by MRGE. Since Bartlett did not place MRGE in default, see La.Civ.Code arts. 1911 & 1933, it may not claim lost profits under these circumstances. The trial judge did not err in denying this claim.
 
 
 21
 A final issue presented for our consideration is the district court's award to IFE of $21,637.27 due it from a grain "swap" with Bartlett. Bartlett argues that the trial court erred either by labeling the arrangement as an open account or in not charging IFE's acceptance of inferior quality grain an "expense," payable by the Ferruzzi Group under then existing contractual arrangements. We find no error in the district court's conclusion that this matter was a separate undertaking and that IFE was entitled to judgment for this amount.
 
 
 22
 The decision of the district court is in all respects AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452 October 14, 1980
 
 
 [1]
 Ferruzzi, S.P.A., is the successor in interest to Ferruzzi & Co., S.A
 
 
 [2]
 Although each buy/sell transaction constituted a separate contract, a standard procedure developed. Unless otherwise provided for, the Ferruzzi Group paid all incidental expenses, such as demurrage, incurred with respect to handling the grain from the point of its initial loading until delivered to an ocean-going vessel at the MRGE elevator
 
 
 [3]
 "Since the reference in the instant case was under § 636(b)(3), and not an appointment of a special master under § 636(b)(2), the standard of appropriate district court review ... was not necessarily the Rule 53(e)(4) standard." 630 F.2d at 355
 
 
 [4]
 See La.Civ.Code art. 1949; Hayes Grain & Comm'n Co. v. King-Drake Co., 16 La.App. 379, 133 So. 540 (1931)
 
 
 [5]
 "Allegations of fraud present an issue of fact. Musser v. Copping, 325 So.2d 681 (La.App. 4th Cir. 1975). Fraud is never presumed and it must be proved by clear and convincing proof not simply by a preponderance of the evidence." Karst v. Fryar, 361 So.2d 1344, 1347 (La.App.1978) (citing Valvoline Oil Co. v. Krauss 335 So.2d 64 (La.App.1976); Capital Bank & Trust Co. v. Core, 343 So.2d 284 (La.App.1977))
 
 
 [6]
 La.Civ.Code art. 1848:
 Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence.
 See, e. g., W. A. McMichael Constr. Co. v. D & W Prop., Inc., 356 So.2d 1115 (La.App.1978).
 
 
 [7]
 The Bartlett grain at issue was weighed by Delta Weighing & Inspection Bureau, Inc., which although not a litigant had substantial contacts with MRGE. Its scales were subject to manual adjustment. The trial court found Delta's weight certificates unreliable. This finding is not clearly erroneous. Fed.R.Civ.P. 52(a)
 
 
 [8]
 Fed.R.Evid. 803(6) provides that the following is not excluded by the hearsay rule:
 A ... report ... of ... events ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum report, record, or data compilation ... unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness.
 
 
 [9]
 La.Civ.Code art. 3536: "The following actions are prescribed by one year: That for ... damages ... resulting from offenses or quasi offenses ...."
 
 
 [10]
 La.Civ.Code art. 3537: "The prescription mentioned in the preceding article runs: with respect to the merchandise ... not delivered, from the day of the arrival of the vessel ...."
 
 
 [11]
 Alternatively, the district court found that even if the shortweighing action was grounded in tort, the counterclaim was seasonably commenced by reason of the doctrine of contra non valentem. The trial judge considered the accrual of prescription suspended, due to MRGE's concealment of its wrongdoing, until May 6, 1979. Given our disposition of the limitations issue, we do not address this question
 
 
 [12]
 Bartlett maintains it was not aware of the shortweighing until nearly two years after discontinuing business with the Ferruzzi Group