**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Craig Lee CHILDS, Defendant–Appellant.**

**No. 92–10645.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1993.

Decided Sept. 28, 1993.

Jared O. Smith, Tempe, AZ, for defendant-appellant.

W. Allen Stooks and Karen S. McDonald, Asst. U.S. Attys., Phoenix, AZ, for plaintiff-appellee.

Before: CHOY, HUG and LEAVY, Circuit Judges.

CHOY, Circuit Judge:

Defendant Craig Lee Childs appeals his conviction on four counts of possession of a stolen vehicle in violation of 18 U.S.C. § 2313 and his sentence of one year incarceration and five years probation. Childs argues that (A) venue was improper in the District of Arizona, (B) documents were admitted as business records without proper foundation, (C) duplicate copies of documents were erroneously admitted in lieu of the original docu-

ments, (D) the government relied on foreign law at trial without giving reasonable notice, (E) the prosecutor engaged in misconduct during the course of plea negotiations, and (F) the government improperly used a peremptory challenge to remove a Native American prospective juror. We find these arguments without merit and we affirm.

## I. BACKGROUND

Five vehicles were reported stolen in Arizona between May and July of 1987. During this same period of time, Craig Lee Childs registered these cars in Calgary, Alberta, Canada, using the name Craig Lee Connors. Childs, along with another man, was identified as having test-driven one of the cars in Arizona shortly before it was stolen.

On April 19, 1989, Childs was indicted in Arizona on five counts of Possession of a Stolen Vehicle Transported in Interstate Commerce in violation of 18 U.S.C. § 2313. Childs was arrested on March 8, 1991 in Oklahoma. He was released on bond and ordered to appear before a Magistrate Judge in Phoenix. Childs made a motion to dismiss the case, arguing that venue was improper. This motion was denied after a hearing. A jury trial was held in Phoenix and Childs was found guilty of four counts of the indictment.[1]

## II. DISCUSSION

A. *Venue*

■ Childs was convicted in the District of Arizona for possession of stolen motor vehicles in violation of 18 U.S.C. § 2313. Childs argues that venue was improper in the District of Arizona. The existence of venue is a question of law which we review *de novo*. *United States v. Abernathy*, 757 F.2d 1012, 1014 (9th Cir.), *cert. denied*, 474 U.S. 854, 106 S.Ct. 156, 88 L.Ed.2d 129 (1985).

Section 2313 provides:

§ 2313 Sale or receipt of stolen vehicles

(a) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, which has

---

1. Count II of the indictment was dismissed prior to trial due to an alleged victim's refusal to testify.

crossed a State or United States boundary after being stolen, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both.

(b) For purposes of this section, the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

18 U.S.C.A. § 2313 (West.Supp.1993).

The government successfully asserted below that venue for this case is controlled by 18 U.S.C. § 3237. Under 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Section § 3237(a) further provides that:

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and ... may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

*Id.*

■ While the prosecution bears the burden of proving the requisite connection to a district for venue purposes, direct proof of venue is not necessary " 'where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid.' " *United States v. Davis,* 666 F.2d 195, 199 (5th Cir.1982) (quoting *United States v. Turner,* 586 F.2d 395, 397 (5th Cir.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979)), *see also United States v. Durades,* 607 F.2d 818, 820 n. 1 (9th Cir. 1979); *United States v. Prueitt,* 540 F.2d 995, 1006 (9th Cir.1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977).

■ The evidence in this case reveals that all of the cars were stolen from Arizona during a short period of time, that Childs was seen test-driving one of the stolen cars in Arizona the day before the car was stolen, and that Childs registered the stolen cars in Canada shortly after they were stolen. This evidence supports the inference that Childs stole the cars in Arizona and moved them through the United States into Canada. Accordingly, we hold that venue was proper in Arizona.

**B.** *Admission of Documents as Business Records*

■ Childs argues that the district court erroneously admitted a number of documents as business records without proper foundation. District court decisions to admit evidence under the business records exception to the hearsay rule are reviewed for abuse of discretion. *See United States v. Bland,* 961 F.2d 123, 126 (9th Cir.), *cert. denied,* ——— U.S. ———, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992).

Fed.R.Evid. 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

■ Childs challenges the admission of the government's exhibit 34, an application for Alberta, Canada license plates in the name of Craig Lee Connors. Exhibit 34 was admitted as a business record of the Alberta Division of Motor Vehicles ("Alberta DMV"). Childs argues that the admission of exhibit 34 was improper because the exhibit was not made by the Alberta DMV, but by a private

auto club that was contracted by the Alberta DMV to issue licenses.

Testimony indicated that the private auto club was hooked directly into the DMV's computer system and could perform transactions on-line.[2] The private auto club was following the DMV's procedures for issuing licenses and was performing the transactions directly on the DMV's computer system. For the purpose of issuing license plates, the private auto club and the DMV were essentially acting as one business entity. Accordingly, we find that the district court did not abuse its discretion in admitting exhibit 34 as a business record of the Alberta DMV.

■ Childs objects to the admission of the government's exhibits 4, 5, 6, 7, 8, and 13, arguing that the circumstances surrounding their preparation indicate a lack of trustworthiness. The government alleged at trial that Childs manipulated the Canadian system. Childs argues that he may have had the help of an accomplice within the Canadian system, and if so, "the documents would lack trustworthiness and would not have been made in the regular course of business." Childs does not point to any evidence in the record suggesting the presence of such an accomplice within the Canadian system. There is no support for this frivolous argument.

■ Childs next argues that the government's exhibits 19, 20, 23, 31 and 32 were erroneously admitted. These exhibits include several types of documentation kept by auto dealers in connection with the stolen cars, such as certificates of title, purchase orders and odometer statements. They were introduced to show that the stolen automobiles were the same cars that Childs possessed in Canada. These documents were admitted as business records of the automobile dealers. Childs argues that the documents were improperly admitted because, although the documents were kept by the automobile dealers in the regular course of business, the dealers did not *make* the documents.

Several circuits have held that exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy. *See, e.g., United States v. Doe,* 960 F.2d 221, 223 (1st Cir.1992) (upholding admission of pistol invoice as a business record of the sports shop which received the invoice where witness testified that he received the invoice and that he relied on " 'documents such as those,' in his business to show 'acquisition' of the pistol."); *United States v. Parker,* 749 F.2d 628, 633 (11th Cir.1984) (upholding admission of customs certificate for liquor as a business record of a distilling company) ("That the witness and his company had neither prepared the certificate nor had firsthand knowledge of the preparation does not contravene Rule 803(6)."); *Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain,* 659 F.2d 1314, 1318–19 (5th Cir.1981) (upholding admission of grain weight certificates prepared by government entities as business records of private grain company).

In *United States v. Ullrich,* 580 F.2d 765 (5th Cir.1978), the Fifth Circuit considered and rejected the same argument Childs is now making before this court. The prosecutor in *Ullrich* introduced documents to prove the identity of a stolen automobile through the testimony of an employee of an automobile dealership. *Id.* at 771. The documents were prepared by a credit company and an automobile manufacturer, and sent to the dealership. The defendant argued that the documents were improperly admitted as business records because they were not prepared by the dealership. The Fifth Circuit found it "obvious" that the documents were admissible as business records. *Id.* at 772. "Although these documents were furnished originally from other sources, [the dealership employee] testified that they were kept in the regular course of the dealership's business. In effect, they were integrated into the records of the dealership and were used by it." *Id.* at 771.

---

**2.** When the DMV had an overload of work, it contracted the work out to small issuing offices which were given computers by the DMV and were hooked directly into the DMV's computer system.

In this case, as in *Ullrich*, the witnesses from the auto dealerships testified that the documents in question were kept in the regular course of business at the dealerships. Additionally, the auto dealerships relied on the documents' identification of individual cars in keeping track of their cars. The district court did not err by admitting these documents as business records.[3]

Lastly, Childs argues that the government's exhibits 19, 20, 23, 24, 25, 26, 27, 31 and 32 were erroneously admitted because the foundational evidence offered was not presented by the custodians of these documents or by other qualified witnesses. The witnesses who testified concerning these exhibits were former employees of the auto dealerships whose cars were stolen. Although these witnesses were not employees of the auto dealerships at the time they testified at trial, they were employees of the dealerships when the cars were stolen.

■■■ A witness does not have to be the custodian of documents offered into evidence to establish Rule 803(6)'s foundational requirements. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir.1991); *see also Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1353 (9th Cir.1987), *modified on other grounds*, 866 F.2d 318 (9th Cir.), *cert. denied*, 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." *Ray*, 930 F.2d at 1370. A review of the record indicates that the former employees were familiar with the contents and preparation of the exhibits in question. It was not an abuse of discretion to allow the former

employees to lay the foundation for these exhibits.

### C. *Admission of Copies of Documents*

Childs argues that the district court improperly admitted copies of a number of documents into evidence.[4] Specifically, Childs challenges the admission of the government's exhibits 19, 20, 23, 24 and 32, which were admitted as business records of the auto dealerships. These exhibits include several types of documentation kept by the auto dealers in connection with the stolen cars, such as certificates of title, purchase orders and odometer statements.

■■■ Childs objected to the admission of all of these exhibits, but he did not object to the admission of exhibits 23, 24 and 32 on the ground that they were copies. A defendant who objects to the admission of evidence must state the specific grounds for his objection. Fed.R.Evid. 103(a)(1). Since Childs did not object to the admission of exhibits 23, 24 and 32 on the basis that they were copies, we review the admission of these exhibits for plain error. *See United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990).

While it is somewhat difficult to tell from the record the basis of Childs' objection at trial to the admission of exhibits 19 and 20, Childs' objection appears to have been based in part on the fact that they were copies. Therefore, we review the district court's decision to admit these copies for abuse of discretion. *See United States v. Skillman*, 922 F.2d 1370, 1375 (9th Cir.1990).

Childs argues that exhibits 19, 20, 23, 24, and 32 were "uncertified copies of documents

---

**3.** The reasoning in *NLRB v. First Termite Control Co.*, 646 F.2d 424 (9th Cir.1981), does not apply to this case. In *First Termite*, the NLRB sought to introduce a freight bill which came from the files of a lumber company through the testimony of the lumber company's bookkeeper. The freight bill was prepared by a railroad company, not by the lumber company. *Id.* at 425–26.

We reversed the district court's decision to admit the freight bill as a business record. In reaching this decision, we emphasized the fact that the lumber company did not rely on the portion of the record at issue and "had no inter-

est in the accuracy of that portion of the [record]." *Id.* at 429.

In contrast, the auto dealers in this case did rely on the records at issue and had substantial interest in their accuracy. The circumstances of this case support the conclusion that the records are trustworthy.

**4.** Rule 1002 of the Federal Rules of Evidence provides:

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules of by Act of Congress.

authorized to be recorded and supposedly recorded or filed" with the State of Arizona and the State of Minnesota. Therefore, Childs asserts that Rule 1005 of the Federal Rules of Evidence applies to the admission of these documents and that the government did not comply with Rule 1005.

Rule 1005 provides in part:

The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed ... if otherwise admissible, may be proved by copy, certified as correct in accordance with rule 902 or testified to be correct by a witness who has compared it with the original.

Rule 1005 is designed to insure the reliability of public records while making it easier to prove their content. Public records receive somewhat different treatment from other records under the rules of evidence because "[r]emoving [public records] from their usual place of keeping would be attended by serious inconvenience to the public and to the custodian." Fed.R.Evid. 1005 advisory committee's note.

■■■ If the proponent is not attempting to establish the content of the public record as such, but rather is trying to prove the content of the original document regardless of whether or not it is a public record, the rationale behind Rule 1005 does not apply. In that situation it is more appropriate to admit a copy of that document under Rule 1003, the general provision addressing the admission of duplicates, rather than under Rule 1005. 5 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 593, at 530–531 (1981).

This reasoning is particularly applicable if the copy was made from an outsider's files, not from the public record. "While the term 'record' should be read to embrace every kind of official document ..., the reasons underlying Rule 1005 suggest that the provision ought not to extend to a copy of such material made from an original in the hands of an outsider, and that any such copy should

be received, if at all, only under Rule 1003." *Id.* at 532.[5]

■■■ If the exhibits in question were introduced to prove the content of public records as such, the government would have been required to comply with Rule 1005. However, the prosecutor did not admit these exhibits to prove the content of public records. Rather, these exhibits were admitted to prove that the cars stolen from the auto dealerships were the same cars Childs possessed in Canada. The exhibits are photocopies made from documents in the auto dealerships' files and were admitted to prove the content of those files. Accordingly, we review the admission of these exhibits for compliance with Rule 1003.

Rule 1003 of the Federal Rules of Evidence provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

■■■ ■ Childs asserts that it was unfair to admit these duplicates in lieu of the originals because the duplicates were obtained from law enforcement files. He asserts that because the duplicates were obtained from law enforcement, the opportunity for mischief existed and the admission of these exhibits should be given higher scrutiny. Since there is nothing in the record suggesting that these exhibits were altered by law enforcement personnel, the district court did not err by admitting these exhibits. *See Skillman*, 922 F.2d at 1375; *see also United States v. Morgan*, 555 F.2d 238, 243 (9th Cir.1977).

■■■ Childs also objects to the admission of exhibits 2 through 8, arguing that they were not properly authenticated. A district court's decision regarding the authenticity of evidence is reviewed for abuse of discretion. *United States v. Chu Kong Yin*, 935 F.2d 990, 994 (9th Cir.1991). Exhibits 2 through 8 were documents filed with

---

**5.** *Cf. Amoco Production Co. v. United States*, 619 F.2d 1383, 1390 (10th Cir.1980) ("[I]t is the actual record maintained by the public office which is the object of Rule 1005, not the original

deed from which the record is made. If the original deed is returned to the parties after it is recorded, it is not a public record as contemplated by Rule 1005.").

the Alberta DMV. Rule 902(3) of the Federal Rules of Evidence provides for the self-authentication of foreign public documents. Childs correctly contends that the requirements of Rule 902(3) were not met with regards to exhibits 2 through 8. However, complying with Rule 902 is not the only means of authenticating a document. "Under the Federal Rules of Evidence, documents may provide their own authentication or the necessary foundation may be established by extrinsic evidence." *Chu Kong Yin,* 935 F.2d at 994.

■ Under Rule 901(b)(1) of the Federal Rules of Evidence, a document can be authenticated by the testimony of a witness with knowledge. Marie Vernon, a supervisor at the Alberta DMV, testified concerning exhibits 2 through 8 as the custodian of those records. In response to Childs' argument at trial that exhibits 2 through 8 did not meet the requirements for being self-authenticating, the district court recognized that Ms. Vernon's testimony presented an alternative means for authenticating those exhibits. The district court did not abuse its discretion in relying on Ms. Vernon's testimony to authenticate exhibits 2 through 8. *See United States v. Blackwood,* 878 F.2d 1200, 1202 (9th Cir.1989) (per curiam).

### D. *Foreign Law*

■ Childs contends that the government relied on foreign law at trial without giving reasonable written notice in violation of Rule 26.1 of the Federal Rules of Criminal Procedure. Ms. Vernon testified as the custodian of records about the procedural process by which exhibits 2 through 8 were filed in Canada. These exhibits were admitted as business records of the Alberta DMV. Childs points out that Ms. Vernon's testimony involved explanations of Canadian law and procedures.

Rule 26.1 of the Rules of Criminal Procedure provides:

Determination of Foreign Law

A party who intends to raise an issue concerning the law of a foreign country shall give reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Childs argues that the district court had to determine foreign law in deciding whether Ms. Vernon was the custodian of the Canadian government documents. However, the district court determined that Ms. Vernon was the custodian of the documents based on her testimony at trial. Since there was no need for the district court to make any determination of foreign law, the requirements of Fed.R.Crim.P. 26.1 are inapplicable to this case.

### E. *Prosecutorial Misconduct*

Childs contends that the prosecutor engaged in misconduct during plea negotiations. According to Childs, the government offered him deferred prosecution if he paid full restitution, but did not provide sufficient notice or documentation of the amount of restitution required. At the time of performance, the government sought $10,000 in restitution, which Childs says he was unable to pay on that date. The case went to trial. After the verdict was rendered, the court ordered Childs to pay $5,441.52 in restitution.

Childs does not clearly articulate the nature of the misconduct he alleges occurred during the plea negotiations. Childs appears to be making two arguments regarding the nature of the alleged prosecutorial misconduct: (1) given the disparity in the amount of restitution sought and the amount ordered, the prosecutor by seeking $10,000 in restitution came "unconscionably close to extortion" and, therefore, engaged in misconduct, and (2) Childs and the prosecutor had a deal which the prosecutor breached by refusing to be satisfied with a lesser amount in restitution.

#### 1. *Allegation of Extortion*

Childs asserts that because the amount of restitution the prosecutor sought was greater than the amount eventually ordered by the trial court, the prosecutor's behavior came "unconscionably close to extortion." Al-

though Childs does not specifically articulate what remedy he seeks, he apparently means to argue that the prosecutor's behavior constituted outrageous government misconduct warranting dismissal of the case.

 Dismissal of an indictment is warranted if the government's misconduct violated the Due Process Clause. To violate due process, government conduct "must be so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir.1991) (citing *United States v. Ramirez*, 710 F.2d 535, 539 (9th Cir.1983)). While the amount of restitution sought by the prosecutor from Childs during plea negotiations was greater than the amount eventually ordered by the court, it was not an exorbitant sum coming "unconscionably close to extortion," given the number of stolen cars involved. The prosecutor's request for $10,000 is not the type of conduct which "violate[s] the universal sense of justice." *Id.* Childs argument is without merit.

### 2. Breach of Plea Agreement

 Prosecutors may not breach promises made in plea agreements. *See e.g., Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *United States v. Garcia*, 519 F.2d 1343, 1345 (9th Cir.1975). Childs contends that he and the prosecutor had a deal which the prosecutor breached by refusing to be satisfied with less than $10,000 in restitution. However, there is no evidence that Childs and the prosecutor ever reached a final agreement. The "deal" Childs was refers to was evidently a generalized understanding with the prosecutor that Childs would get deferred prosecution in exchange for paying full restitution. Since the parties never agreed on the amount of restitution to be paid, it appears that there was no binding plea agreement for the prosecutor to breach.

### F. Peremptory Challenge

 Prosecutors are precluded from using their peremptory challenges to remove jurors on the basis of their race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To establish a *Batson* violation, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96, 106 S.Ct. at 1723. After a prima facie showing has been made, the prosecutor can offer a race-neutral explanation for the removals. *Id.* at 97, 106 S.Ct. at 1723. The Supreme Court has defined a race-neutral explanation as "an explanation based on something other than the race of the juror.... Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, —— U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion). If the prosecutor gives a race-neutral explanation, the trial court must determine whether the defendant has carried the burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724; *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1866.

 Childs argues that the government improperly used a peremptory challenge to strike the only Native American in the jury pool, Mr. Eli Juan. Childs objected to the government's peremptory challenge of Mr. Juan before the jury was sworn. The prosecutor explained that he removed Mr. Juan because during voir dire Mr. Juan had appeared hesitant and seemed to go along with whatever the questions suggested to him.[6] The district court found that the prosecutor's explanation for striking Mr. Juan was race-neutral and there was no discriminatory intent. A trial court's finding on discriminatory intent is considered a finding of fact entitled to deference on appeal, and is reviewed for clear error. *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1868; *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *United*

---

**6.** During voir dire, Mr. Juan initially indicated that he could not sit fairly as a juror in this case because he had previously had his car stolen by hitchhikers who beat him. When he was told that this case did not involve violence, Mr. Juan changed his position and indicated he could sit as a juror.

*States v. Castro–Romero,* 964 F.2d 942, 943 (9th Cir.1992).

 The record in this case supports the district court's finding. Mr. Juan initially expressed considerable reservations about his ability to be a fair juror and then changed his mind. The district court did not clearly err in determining that the prosecutor's reasons for striking Mr. Juan were race-neutral.[7]

**AFFIRMED.**

---

**7.** The government argues that Childs never met the first requirement under *Batson* of making a prima facie showing of racial discrimination. The issue of whether or not Childs established a case of prima facie discrimination is of little relevance at this stage in the proceedings. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866.