DUFRESNE, Judge.
This is an appeal by Jefferson Disposal Co., Inc., plaintiff-appellant, from a judgment in favor of the Parish of Jefferson, defendant-appellee, in a suit, the single issue of which is the interpretation of an ambiguous clause appearing in several contracts. Because we conclude that the trial court properly resolved this ambiguity on the basis of the prevailing custom in the industry, we affirm.
Between 1970 and 1978, Jefferson Parish let five bids for garbage collection and disposal in three districts of the parish. In each case, the bid specifications gave an estimated number of “residential units ... to be served.” Jefferson Disposal successfully bid on each district contract. These bids were based on the estimated number of units in each district as given in the specifications, and were firm for the first year of each contract. In three of the contracts there was a yearly adjustment clause in the specifications based on:
“The number of new household units to be serviced in the District. The number of such households shall be determined by the water meter records of the Department of Water.”
When Jefferson Disposal commenced the work, it realized that its overhead on the contracts was higher than anticipated. In mid-1978, it notified the Parish of this problem and contended that the probable explanation was that the base estimates of units in the bid specifications were too low. When the parties began looking into this question, it was discovered that the unit counts, at least in regard to the adjustment clauses, were based on the numbers of active water meters shown in the Water Department’s records, and therefore did not include vacant units. Jefferson Disposal claimed that the contracts contemplated that all units were to be counted, whether vacant or not, and insisted that any recalculation of the original unit estimates, as well as the yearly adjustments, be made on both active and inactive water meter records.
When good-faith negotiations on these issues reached an impasse, Jefferson Dis *641 posal filed suit in March, 1980, seeking to have the court determine the correct total number of units in each district, both active and inactive, and for judgment against the Parish for payments based on these totals.
In November, 1981, while suit was still pending, the parties stipulated that an outside consultant acceptable to both would be hired to make a count of all units in each district for each year between the signing of the contracts and 1981. They further agreed that these counts would be binding on the parties and that Jefferson Disposal would be paid on the basis of those figures times the prices per unit.
The question of whether vacant units would be included or excluded from the consultant’s counts, was not resolved and this issue was tried by the court.
After trial on the merits, the court found that the question of vacancies was an unforeseen event not contemplated by the parties at the time of execution of the contracts.
He therefore looked to the expert testimony which was that garbage disposal contracts which use utility records to determine the number of units to be served invariably use the active billing lists found in such records, and thus exclude vacant units. Based on this testimony, he concluded that this was the custom in the industry and accordingly, rendered judgment in favor of the Parish of Jefferson. Jefferson Disposal now appeals.
Three errors by the trial court are urged.
1. That the contracts are clear that vacant units are to be included in the count, and that it was thus improper to resort to custom to interpret these agreements, contrary to their express language.
2. That even if the terms are ambiguous, that ambiguity is properly to be construed against the party who confected the contract; and
3. The expert testimony was not relevant to the language of the contracts.
We find no merit in these allegations.
Jefferson Disposal first argues that the contracts are clear that vacant units are to be counted. In support of this position it refers to words such as “every”, “each” and “all” units in the districts. It further contends that the reference to “water meter records” in the escalation clauses can only mean all records, both active and inactive.
Our review of the entire contracts pursuant to La.Civ.Code arts. 1948 and 1949, leads to the opposite conclusion. In regard to the basic estimates of the specifications there is no mention if whether these figures included or excluded vacant units. Other language, moreover, is of little help.
On the one hand, there are references to “each unit”, “units serviced”, “units to be served”, and “residential units”, all of which lend weight to Jefferson Disposal’s contention that the total number of “units”, whether vacant or not, controls. On the other hand there are references to “all residential customers”, “residential units or customers to be serviced”, “increase in residential customers served”, and “number of customers served”, which indicate that it is the actual number of customers that governs, and therefore that vacant units are excluded.
Nor do we find the reference to “water meter records” in the escalation clauses clear. Obviously, if vacant units were excluded in the’ basic estimates, they would also be excluded from the increases and vice versa, but as it cannot be determined what the basic estimates included or excluded, the ambiguity cannot be resolved by reference thereto.
Jefferson Disposal also argues in this regard that because the contracts specifically exclude service to hotels and certain large apartment complexes, they therefore include all other “units”, whether vacant or not. While we appreciate the thrust of this contention, we. are nonetheless not persuaded by it. It is clear from the record that these particular exclusions were based on the fact that these hotels and apartment complexes employ private garbage and trash companies to service them. That the *642 bid specifications therefore excluded these units outright tells us nothing about whether or not, vacant units in the districts were to be paid for under the contracts.
Neither do we find the parole evidence of the parties’ intent helpful in explaining this ambiguity. The Parish official who prepared the specifications testified that they simply never considered whether or not vacancies were to be paid for. Jefferson Disposal’s representatives also admitted that, although they assumed they would be paid for all units, they never specifically considered the question of vacancies.
Considering the language of the contracts as well as the testimony of the parties, we find, as did the trial court, that these contracts are indeed ambiguous on the issue of “vacancies”.
The second error urged by Jefferson Disposal is that if the contracts are ambiguous, then that ambiguity must be resolved against the party who prepared the contract. While we do not dispute that general rule of law, we find it inapplicable here. Article 1953 of the Civil Code relied on by the trial court, states that “Whatever is ambiguous is determined according to the usage of the country, where the contract was made.” (emphasis added) If it were true, as Jefferson Disposal argues, that all ambiguities in contracts must be resolved against the party who prepared the contract, then article 1953, would be meaningless. Our interpretation of the law is therefore that where the ambiguity can be resolved by reference to a received usage, article 1953, provides the proper rule of interpretation. Henry v. Ballard & Cordell Corp., 418 So.2d 1334 (La.1982); Southern Bitulithic Co. v. Algiers Ry. & Lighting Co., 130 La. 830, 58 So. 588 (La.1912); Fee v. Vancouver Plywood Co., Inc., 331 So.2d 151 (La.App. 3rd Cir.1976).
This brings us to Jefferson Disposal’s final argument which is that the trial court erred in crediting the testimony of the only expert to testify as to the received usage in the trade. That testimony was that the contracts at issue are known in the trade as dwelling unit contracts; that in some 20% of such contracts the number of units is determined by an actual inventory; and that in the remaining 80%, that number is determined by active utility billings, which of course do not include vacancies. Jefferson Disposal urges that this testimony is irrelevant here because its contracts do not use the term “billing records”, but rather “water meter records”. In our opinion, this begs the question. A crucial issue in the ease is what the term “water meter records” means. We have already determined that the phrase is ambiguous, and are seeking to know here whether there is a received usage in the trade which would shed light on its meaning. This is precisely what the expert’s testimony was directed toward, and we find no error in the trial court’s finding that such a usage does prevail on the basis of this testimony.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.