534 So.2d 1310 (1988)
FRISCHHERTZ ELECTRIC COMPANY, INC.
v.
HOUSING AUTHORITY OF NEW ORLEANS, Edward M. Alba & Associates, Inc. and Edward M. Alba.
No. 88-CA-0399.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1988.
Writ Denied January 20, 1989.
*1311 Russ M. Herman, Edward M. Morris, Herman, Herman, Katz & Cotlar, New Orleans, for plaintiff-appellant.
O'Keefe, O'Keefe & Bernstein, Arthur J. O'Keefe, New Orleans, for appellee Housing Authority of New Orleans.
John I. Hulse, IV, Hulse, Nelson & Wanek, New Orleans, for defendants-appellees Edward M. Alba and Associates, Inc. and Edward M. Alba.
Before BYRNES, WILLIAMS and PLOTKIN, JJ.
BYRNES, Judge.
Frischhertz Electric Company, Inc. (Frischhertz) appeals the district court's dismissal of its petition against the Housing Authority of New Orleans (HANO), Edward M. Alba & Associates, Inc. (Alba) and Edward M. Alba, individually. This appeal arises out of a dispute over the interpretation of various clauses in the contract documents for electrical renovations in the Iberville Housing Project.
Frischhertz brought suit to recover $127,888.86 plus costs and interests for the expenses of additional materials, labor and delays incurred in the performance of the contract. After a bench trial before Commissioner Holahan, the trial court followed the Commissioner's recommendation to dismiss the suit, finding that the contract terms were explicit in calling for Frischhertz to perform all work necessary to rewire the project and that the steel structural members within the 14 inch thick walls should be commonly anticipated in masonry buildings.
FACTS
On May 22, 1981, Frischhertz entered into a contract agreement with HANO to perform electrical renovations at the Iberville Housing Project for approximately $2,367,616. The contract had been open to public bid and Alba, the architect/engineers, had provided Technical Specifications and Drawings detailing the job, accompanied by HANO's General and Special Conditions for the bid package. (Alba's fee charged to HANO was approximately $99,000.)
The electrical renovations included providing new circuits for air conditioning and kitchen appliances; installing new apartment panels and connecting existing branch circuits to the new apartment panels; and running new electric wiring through conduits into the Iberville Project apartments.
Work commenced in October, 1981, and in December of 1981, at a monthly jobsite meeting, Frischhertz reported the problem of drilling and hitting steel obstructions within the walls above the doorways and windows in its attempt to install the conduits in some of the apartments, later determined to be 201 (approximately 25%) of the 800 project apartments. Frischhertz complied with the contract and gave notice in writing. Alternate methods of installing the conduits were discussed in correspondence and in monthly jobsite meetings. In March, 1982, HANO's representative knocked a large hole in the wall in one of the apartments to determine the extent of the steel obstruction in the apartments. Thereafter, on April 15, 1982, HANO directed Frischhertz to cut the steel structural member pursuant to the Technical Specifications without cost. In June, 1982 Frischhertz proceeded but gave notice of its intent to charge additional compensation. The work was completed well within the maximum time allowed by the contract.
ISSUES
Frischhertz asks for a total sum of $127,888.86 compiled from two figures: $84,124.33 *1312 for additional labor, materials, and time delays encountered in burning the structural steel members; and $43,764.53 for delays associated with the inability to get into locked HANO apartments.
Frischhertz avers that the trial court erred in (1) interpreting the construction contract to exclude any additional expenses incurred by the steel obstruction; (2) not giving adequate weight to witnesses' testimony regarding prior electrical renovations performed by Frischhertz for HANO; (3) excluding expert opinion testimony on customary usage concerning various terms and provisions of the contract; (4) disregarding damages claimed for delays in gaining access to HANO apartments; (5) finding no duty owed by Alba to provide structural plans showing hidden steel obstructions within the apartment walls; and (6) failing to find Alba liable for expenses caused by delays in Alba's response to the problems presented by Frischhertz.
INTERPRETATION OF THE CONSTRUCTION CONTRACT
Frischhertz bases its claim for additional compensation for burning the steel structural members as being unanticipated and not within the scope of work contemplated in the contract. Frischhertz contends that the language of various terms and provisions of the contract are ambiguous and therefore must be construed against the parties who prepared the contract (HANO and Alba). HANO counters that the contract is not ambiguous and that Frischhertz is not entitled to additional compensation for materials and labor involved in burning and cutting the steel obstructions, contending that this work was within the scope contemplated by the contract.
The threshold issue is whether the contract's terms are ambiguous or explicit. If the language of the contract provisions are found to be explicit and unambiguous, no additional evidence can be introduced. Under La.C.C. Art. 2046. "when the words of a contract are clear and explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." In Investors Assoc. Ltd. v. B.F. Trappey's Sons, 500 So.2d 909, 912 (La.App. 3rd Cir.1987), the appellate court ruled that:
[c]ontracts, subject to the interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement.
In finding that the contract was not ambiguous, the trial court excluded additional evidence and expert testimony. However, an examination of the contract indicates that various provisions contain ambiguous terms.
As set forth in the General Conditions, Sec. 3 (p. 2 of 20), Examination of the Premises, and in NO. 5, Special Conditions, Bidder's Inspection, Frischhertz's obligation to inspect the jobsite is ambiguous in that the contract does not set forth what is included in an adequate inspection. Appellees point out that the term "visual" inspection never is mentioned in the contract. However, Alba claims that it could not be responsible for providing detailed structural drawings for every apartment. In like manner, this court interprets that the contractor's responsibility to inspect could not encompass knocking out walls in each apartment to find the hidden structural steel members prior to bidding. The obstructions could not be found by knocking down one wall in one apartment because the obstructions were present in approximately 25% of the Iberville Project apartments, presenting a hit or miss situation.
Other terms of the contract are ambiguous, including the interpretation of the meaning of latent conditions materially different from those provided in the contract under General Conditions, Claim, p. 5 of 13, Paragraph 9b. HANO and Alba contend *1313 that the work and equipment used in burning the steel members were not materially different from that necessary for performance of the renovation work required by the contract. It is not unusual to find lintels and reinforced steel rods in the walls of masonry buildings. However, the steel obstructions in question differed materially from those ordinarily found in Masonry buildings in that they were solid structural members going almost all the way from the brick lintel to the top of the slab to the next floor. The unusual condition of supplemental steel obstructions were found in approximately 25% of the Iberville Project apartments in addition to the lintels and reinforcements normally encountered above doorways and windows in masonry buildings.
Further, under the Technical Specifications, Electrical, p. 4 of 20, Sec. 08, Drawings, paragraph 8, the paragraph concludes:
Any reasonable changes in the location of equipment up to the time of roughing in is reserved by the Engineer and the Housing Authority of New Orleans and any minor deviation shall be made without additional costs. (emphasis added).
This contemplates that any major deviation would be made with additional costs.
In like manner, Paragraph 11, Cutting and Patching of the Technical Specifications is ambiguous in that it requires all necessary cutting and patching for the installation of the work; however, it further provides for prior approval by the engineer and HANO for cutting structural members which can be interpreted to be beyond the scope of the cutting and patching considered to be part of the contractor's contractual work.
This court concludes that various provisions of the contract are ambiguous.
2 & 3 EXTRINSIC EVIDENCE AND EXPERT TESTIMONY
Where the language in the contract is ambiguous, it should be construed against the drafters. If the contract is executed in a standard form, the doubtful terms should be interpreted in favor of the other party. La.C.C. Art. 2056:
Art. 2056. Standard-form contracts
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Citizens Bank and Trust Co. v. Robertson, 482 So.2d 867 (La.App. 2nd Cir.1986), writ den., 486 So.2d 754 (La.1986).
Consideration of customary manner of fulfilling like contracts, as well as custom and usage to interpret the meaning of the ambiguous terms of the contract is based on La.C.C. Arts. 2053, 2054 and 2055:
Art. 2053. Nature of contract, equity, usages, conduct of the parties, and other contracts between same parties
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.
Art. 2054. No Provision of the parties for a particular situation
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
Art. 2055. Equity and usage
Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
Usage, as intended in the preceding articles is a practice regularly observed in affairs of a nature identical or similar to *1314 the object of a contract subject to interpretation.
In Kenner Industries, Inc. v. Sewell Plastics, Inc., et al, 451 So.2d 557, 560 (La. 1984), the Louisiana Supreme Court found that, "(t)he customs of the industry may be considered when construing ambiguous contracts.... Any deviation from industry custom should have been expressly stated in the agreement." The Louisiana Appellate Court held that expert testimony was relevant as to "the received usage in the trade" in Jefferson Disposal Co. v. Jefferson Parish, 459 So.2d 639, 642 (La.App. 5th Cir.1984).
When there is ambiguous language in the contract, expert testimony is considered. Customs of the industry as presented by the proffered testimony of expert witnesses, J.C. Garner, Vincent Goodman and Norbert Godchaux show that the hidden steel obstructions found above doorways and windows in approximately 25% of the Iberville apartments differed materially from those normally encountered in similar masonry buildings. Not only were the obstructions found in just 25% of the apartments, these structural conditions were not found in similar projects having similar masonry buildings, including the Magnolia, Desire, Florida and Fisher Housing Projects. Vincent Goodman, who had designed electrical renovation work for HANO and others, and had performed work in the Calliope, St. Thomas and Desire Projects, stated that the steel obstructions created a major deviation from conditions usually encountered. He also noted that the contract between HANO and Frischhertz was a standard contract having provisions for electrical renovation which were standard in the community.
Concluding that the contract is ambiguous, this court has reviewed the extrinsic evidence and expert testimony and finds that Frischhertz's claim for extra compensation involved in cutting steel obstacles has merit. The steel obstacles were not contemplated within the scope of the contract. Just as it would be too great a burden for the architect/engineer to detail all structural designs, it would be too great a burden for the contractor to be responsible for all conditions that might occur that are materially different from those normally encountered is masonry buildings.
4. DAMAGES CLAIMED FOR DELAYS IN GAINING ACCESS TO HANO APARTMENTS
A review of Frischhertz's claim for $43,764.53 is based on expenses from delays incurred for the inaccessibility of some of the Iberville Project apartments. Frischhertz contends that it had been the policy in the past for HANO to provide one or two women and a man to gain access to apartments in other projects where Frischhertz had performed electrical renovations for HANO. Frischhertz avers that one employee provided by HANO for apartment access at the Iberville Project was inadequate. HANO notes that there is no contractual provision wherein HANO had to provide for apartment access and Frischhertz should have accounted for any such delays in its bid.
In contract cases, custom should be relevant only if the contract is silent on the issue. La.C.C. Arts. 2053, 2054, 2055 and 2056. The holding of Fontenot's Rice Drier, Inc. v. Farmer's R. Mill Co., Inc., 329 So.2d 494, 498 (La.App. 3rd Cir.1976), writ den., 333 So.2d 239, substantiates that "(i)f the parties make no specific agreement on a particular subject, custom will prevail in the case of controversy." In Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain, 659 F.2d 1314, 1318 (5th Cir. 1981), the United States Fifth Circuit Court of Appeal concluded that, "(i)n certain circumstances a contract is properly interpreted by examining similar agreements of a prior course of transactions between the parties."
Frischhertz maintains that it relief on HANO's policy of providing one or two women and a man to gain access to other *1315 projects where Appellant had performed similar electrical renovation work for HANO in the past under similar contracts. Firschhertz assessed delay time for the inability to gain ready access to the Iberville apartments, claiming that one employee provided by HANO was inadequate.
The contract contains no specific terms providing apartment access by HANO employees. However, in its brief, Frischhertz referred to the pre-bid conference of April 15, 1985, and noted "(t)he policy was established to allow one day delay and then entry shall be made with a key." Alba pointed out that according to the Work Schedules in Tech.Spec. Paragraph J, the electrical contractor was to submit a bar schedule and was to discuss any changes with HANO for approval. Frischhertz countered that it could not supply one because of the hit or miss problem created by the steel obstacles made a building-by-building schedule unfeasible. Frischhertz did supply fliers on a daily basis giving tenants notice of 72 hours.
Accordingly to the testimony of Mr. William R. (Richie) Candebat, Frischhertz's supervisor, the procedure followed in the prior Magnolia Project electrical renovation work done by Frischhertz for HANO was to notify the tenants forty-eight hours in advance. Mr. Candebat stated:
On the Magnolia job we did the same thing except we had two girls and we had a maintenance man. And when we couldn't get in, the maintenance man got in through the window or whatever way. They did not want us to skip an apartment because it would delay the job. (Transcript Vol. II, P. 100).
The evidence introduced at trial failed to establish that a custom existed between the parties. In Mississippi River Grain Elevator v. Bartlett, supra, the federal appellate court ruled that a telex supplemented prior contracts by setting a fixed price per bushel, etc., and was part of the contract between the parties. Similarly, the pre-bid minutes of April 15, 1981 present the only provision concerning access to the apartments and is part of the contract package. HANO complied with this provision previously noted that, "(t)he policy was established to allow one day delay and the entry shall be made with a key" (emphasis added). In the Iberville Project, HANO provided at least one employee with keys; however, a maintenance man was not employed to get into apartments where additional locks had been placed by tenants and other additional HANO employees could not have gained access by using keys. The dubious practice of providing that "the maintenance man got in through the window or whatever way", is not supported by the pre-bid minutes or elsewhere in the contract. Nor is there a showing what practice was provided in the prior Magnolia and Florida Project electrical renovation work that created a "custom as a rule of action having the force of law resulting from a long series of action constantly repeated, which, by uninterrupted acquiescense, acquires its force by common consent." Harrington v. Upchurch, 331 So. 2d 506 (La.App. 3rd Cir.1976), writ denied, 337 So.2d 222. Nor is there sufficient evidence to establish a universal practice or custom of the industry. Dixie Machine Welding & Metal Works, Inc. v. U.S., 207 F.Supp. 84 (E.D.La.1962), aff'd 315 F.2d 439 (5th Cir.1963), cert. denied, 373 U.S. 950, 83 S.Ct. 1679, 10 L.Ed.2d 705; Baton Rouge Sash & Door Co. v. Saale, 298 So.2d 115 (La.App. 1st Cir.1974).
Therefore, Frischhertz's claim against HANO for additional expenses incurred from inaccessibility of some of the Iberville Project apartments has no merit.
5 & 6. ALBA'S DUTY TO PROVIDE STRUCTURAL PLANS AND LIABILITY FOR DELAYS
Frischhertz brings its claim against Alba and Edward M. Alba for failure to provide detailed plans showing the hidden steel obstructions in 201 apartments. Frischhertz contends that Alba (1) owed it a duty to provide detailed structural plans; and (2) was liable for expenses incurred for *1316 delays in responding to the problems that Frischhertz presented.
Alba claims that it owes no duty to provide Frischhertz with the detailed structural drawings; that Frischhertz was on notice that the drawings were diagramatic or schematic; and that Alba met the accepted standards of electrical design for renovation work in an existing masonry building. Alba maintains that proper design work of electrical engineers does not include structural detail. Further, appellees claim that the burden was on the contractor to request additional drawings by the terms of the contract (Sec. 16 of the General Conditions, p. 6 of 13).
The trial court's rejection of Frischhertz's claim that Alba owed the contractor a duty to provide the original structural drawings and specifications (that were on file in the HANO office) is supported by Louisiana jurisprudence. In Maloney v. Oak Builders Inc., 224 So.2d 161, 168 (La. App. 4th Cir.1969), rev'd in part on other grounds, 256 La. 85, 235 So.2d 386 (La. 1970), this Court held that, "in the absence of an express contractual agreement to the contrary, an architect's obligation does not imply or guarantee a perfect plan.... Moreover, the ordinary care and reasonable skill by virtue of which the engineers' or architects' preparations of plans and specifications is to be evaluated in determining whether they are guilty of negligence, must be that same care and skill required by others engaged in the same profession in the same locality."
Qualified as an expert witness at trial, Lucien E. Vivien testified that electrical engineers do not show existing structural detail in renovation design work. The contract provided warnings that the plans were diagramatic and made it incumbent on the contractor to timely request additional plans and specifications as needed.
Additionally, in C.H. Leavell & Co. v. Glantz Contracting Corp. of La., 322 F.Supp. 779, 781 (E.D.La.1971), the United States District Court noted that where there was no contract between the architects and contractor, the architects could not be held liable for damages for "unreasonable delays occasioned by improperly prepared plans". That Court rendered a partial summary judgment in favor of the architects, finding that, "(w)hen the Board retained the Architects, the parties of course knew that eventually bids would be let and a contractor would be selected. That this was a `complex and novel undertaking' does not alter the Architects' traditional duties to the Board, nor convert the Architects' employment into one created for the advantage of the contractor." Any claim of liability would arise from the contract between HANO and Alba; however, HANO did not name Alba architects as third parties.
Frischhertz's claims against Alba and Edward M. Alba have no basis.
For the foregoing reasons, the judgment of the district court is reversed in part and affirmed in part.
There will be judgment in favor of Plaintiff Frischhertz against Defendant HANO in the sum of $84,124.33, plus interest and costs, representing compensation for additional work and expenses incurred beyond the scope of the contract. All other claims are dismissed.
REVERSED IN PART AND AFFIRMED IN PART.
WILLIAMS, Judge, concurs with reasons.
I agree with the result reached by the panel majority. However, because I am concerned that the decision could be used as a precedent in inappropriate cases, I believe the majority's holding should be limited to the facts presented in this case.
My concern is that the majority's holding may be used by unscrupulous contractors to undermine the public bidding process by submitting unrealistically low bids and then producing an increased profit margin through cost overrides on costs that should reasonably have been anticipated and provided for in the contractor's original bid. *1317 Or, that the holding may be used against sophisticated or unsophisticated homeowners who have a fixed price construction agreement with a professional contractor when the homeowner is forced to bear the burden for the "unexpected" deviations that the contractor should reasonably have expected before he prepared and submitted his price quote to the homeowner. Consequently, I am of the opinion that the majority's decision should be limited to the facts sub judice.
For the foregoing reasons, I respectfully concur.