ROSALIND DIGGS BROOKS SENNETT

VERSUS

IRVIN P. BOUDREAUX, SR. AND IRVIN P. BOUDREAUX, JR.

\*      NO. 2023-CA-0013

\*

\*      COURT OF APPEAL

\*

\*      FOURTH CIRCUIT

\*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2012-06336, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
\* \* \* \* \* \*
**Judge Rachael D. Johnson**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

**BELSOME, J., CONCURS IN THE RESULT**

Brian David Katz
Soren Erik Gisleson
HERMAN HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, LA 70113-1116

       COUNSEL FOR PLAINTIFF/APPELLEE

Peter J. Butler, Jr.
Wesley M. Plaisance
Philip J. Giorlando
BREAZEALE SACHSE & WILSON, LLP
909 Poydras Street
Suite 1500
New Orleans, LA 70112

       COUNSEL FOR DEFENDANT/APPELLANT

           **AFFIRMED**
           **OCTOBER 5, 2023**

Appellant, Irvin P. Boudreaux, Jr. ("Boudreaux Jr."), seeks review of the July 15, 2022 district court judgment, declaring the Appellee, Rosalind Diggs Brooks Sennett ("Mrs. Sennett"), to be the sole owner of property located at 1915 South Dupre Street ("the Property") in New Orleans. Pursuant to our *de novo* review, we affirm the district court's judgment, finding the district court did not err in determining Mrs. Sennett is the sole owner of the Property.

**Facts and Procedural History**

The instant appeal involves a dispute over ownership of the Property pursuant to a Counter Letter executed between decedent Irvin Boudreaux, Sr. ("Mr. Boudreaux") and his step-daughter, Mrs. Sennett. Mr. Boudreaux is Boudreaux Junior's father.

On August 1, 1995, Mr. Boudreaux entered into an Act of Sale to purchase the Property, which is a multi-family home, from the former owners. The Property was secured by a mortgage with Johnson Mortgage Corporation. At the time of the purchase, Mr. Boudreaux was married to Mrs. Sennett's mother, Esma Simmons

1

Boudreaux.[1]  Mrs. Sennett, who was a widow in 1995, resided at the Property with her young son in a separate apartment from her mother and step-father.

Following the passing of Mrs. Boudreaux in 1999, Mr. Boudreaux and Mrs. Sennett executed a Counter Letter in the form of an authentic act,[2] on July 12, 2000, declaring that Mrs. Sennett is the owner of the Property:

> That, in truth and in fact all of the expenses incidental to the said sale were paid by Rosalind Diggs Brooks [Mrs. Sennett] and that all payments on said mortgage will be paid by Rosalind Diggs Brooks.
>
> That in truth and in fact Appearer has no interest in said property; that the same was purchased by him for the account of Rosalind Diggs Brooks, and with sums furnished to Appearer by the said Rosalind Diggs Brooks, and that he will execute in favor of said Rosalind Diggs Brooks, or her nominee, at such time as Appearer is called upon so to do, an instrument transferring to the said Rosalind Diggs Brooks, all rights, title and interest that Appearer has or may have in and to the said property.
>
> The said Rosalind Diggs Brooks does hereby bind and obligate herself, her heirs, successors and assigns, if, as and when called upon by the said Irvin P. Boudreaux, Sr., to bind herself jointly and severally with the said Irvin P. Boudreaux, Sr. on any unpaid portion of the remaining indebtedness due on said property.

Around the same time that the Counter Letter was executed, Mr. Boudreaux signed three other documents involving Mrs. Sennett.  He executed a Last Will and Testament, leaving his entire estate to her, and appointing her as his executrix.  He

---

[1] Although the Boudreauxs were married at the time of the purchase, the mortgage contains a declaration from Mrs. Boudreaux that the Property was her husband's separate property and was being purchased with his separate funds.

[2] "An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed." La. Civ. Code art. 1833 (A).

also signed a Power of Attorney, giving her control over his personal affairs and medical decisions, as well as a Living Will, giving her the power to make medical decisions on his behalf.

The record reflects that Mrs. Sennett made mortgage payments on the Property from 1995 to 2005. During this time period, Mrs. Sennett married her current husband, Brian Sennett ("Mr. Sennett"), who also began residing at the Property. The Property was refinanced in 2003, through a home equity loan financed by Bank One, N.A., also known as J.P. Morgan Chase & Company.[3]

Subsequently, the Property flooded in 2005, in the aftermath of Hurricane Katrina. Mrs. Sennett avers that she handled the insurance claims and applied for relief through the Road Home program, using Mr. Boudreaux's power of attorney. The insurance checks and Road Home funds were issued to Mr. Boudreaux and the checks were deposited into his bank account. However, Mrs. Sennett contends these funds were "earmarked to pay the mortgage;" therefore, all of the remaining mortgage payments came from these funds. The Sennetts aver that Mr. Sennett gutted the Property with his co-workers and he renovated the Property over time with the help of his father.

By the spring of 2012, the relationship between Mr. Boudreaux and Mrs. Sennett began to sour as Mr. Boudreaux became agitated with the Sennetts. This precipitated Boudreaux Junior traveling from Houston, Texas, to New Orleans in April 2012, to take his father back with him to Houston, where they lived together until Mr. Boudreaux's death.

---

[3] Mrs. Sennett testified the slab of the Property broke and that refinancing was necessary in order to pay for the foundation work.

Following Mr. Boudreaux's relocation to Texas, Mrs. Sennett asserts that she received an alert that someone had attempted to tamper with Mr. Boudreaux's bank account that contained the Hurricane Katrina funds. She maintains that out of concern for everything she and her husband had worked so hard for, she used Mr. Boudreaux's power of attorney to withdraw $50,000.00 from his bank account, which was used to pay off the Bank One mortgage. It is undisputed that funds from Mr. Boudreaux's account were used to pay off the Bank One mortgage.[4] Additionally, on April 24, 2012, Mrs. Sennett recorded the Counter Letter in the Land Records of Orleans Parish.

On the same date the Counter Letter was recorded, Mr. Boudreaux executed a new will, revoking his previous will and leaving the Property to Boudreaux Junior. On May 7, 2012, a deed was recorded in the Land Records of Orleans Parish in which Mr. Boudreaux sold the Property to Boudreaux Junior for $10.00.

Subsequently, Mrs. Sennett filed a Petition for Specific Performance, Declaratory Judgment, Temporary Restraining Order, Preliminary and Permanent Injunctions, naming Mr. Boudreaux and Boudreaux Junior as defendants. The district court granted Mrs. Sennett a temporary restraining order. However, following a contradictory hearing, on July 26, 2012, the district court rendered judgment in favor of Mr. Boudreaux and Boudreaux Junior, denying her request for a preliminary injunction.[5]

---

[4] Boudreaux Junior maintains that from 2001 to 2012, Mr. Boudreaux paid at least over $138,000 in mortgage payments on the Bank One mortgage, which had a final total balance paid of approximately $198,000.

[5] In its Reasons for Judgment, dated July 26, 2012, the district court explained that Mrs. Sennett did not make a *prima facie* case:

> While plaintiff submitted the counter letter, she presented no evidence that she made any of the payments on the mortgage

Mr. Boudreaux passed away on March 3, 2017. Boudreaux Junior was later substituted as a party defendant for his father.

The district court conducted a bench trial on May 11, 2022. Four witnesses testified at trial: Mrs. Sennett, Mr. Sennett, Boudreaux Junior and Tammy Rodriguez, the Senior Vice President at Standard Mortgage. And, the Court admitted Mr. Boudreaux's deposition into evidence. The district court later rendered judgment in favor of Mrs. Sennett, finding that she was owner of the Property. Additionally, the district court issued Reasons for Judgment on the same date.

In its Reasons for Judgment, the district court explained that it granted Mrs. Sennett's request for a declaratory judgment because it found that the Counter Letter reflects that Mrs. Sennett is the true owner of the Property and further that her ownership was not conditioned upon her making all of the mortgage payments for the Property: [6]

> Initially, the court notes that pursuant to La. C.C. article 2025, a Counter Letter is a writing that expresses the true intent of the parties. And, Louisiana courts have defined a Counter Letter as a contract between a record owner and a non-record owner wherein the record owner recognizes the true ownership interest of the non-record owner. [*Whittington v, Bienvenu,* 832 So.2d 832 (La. App. 3 Cir. 1989) (citing *Karcher v, Karcher*, 70 So. 288 (La. 1915); see also *Roy v. Robco*, 721 So.2d 45, 46 (La. App. 5 Cir. 10/14/98) (quoting *Whittington*, 539 So.2d at 835).]

---

> pursuant to the conditions in the counter letter. Therefore, the application for preliminary injunction is denied and this matter will proceed as an ordinary proceeding.

[6] Appellate court's review judgments, not Reasons for Judgment; nevertheless, Reasons for Judgment may be reviewed to "gain insight" into the district court's judgment. *Growe v. Johnson*, 20-0143, p. 6, n. 3 (La. App. 4 Cir. 2/17/21), 314 So. 3d 87, 93.

Furthermore, in *6126, LLC v. Strauss*, 131 So.3d 92,101 (La. App. 4 Cir. 12/4/13), citing *Peterson v. Moresi*, 186 So. 737 (La. 1939), the court found that a Counter Letter did not:

> secretly convey a property interest or evince a promise to convey, in exchange for consideration, a property interest at some future time, but instead acknowledges a state of affairs already established between the signatories. [Emphasis added.]

Based upon the foregoing, the court finds that the Counter Letter is not conditional on Mrs. Sennett making all of the mortgage payments. Rather, at the time it was confected and signed by Mr. Boudreaux, Sr. and Mrs. Sennett, it was a valid and binding agreement between the two of them. It evidences the true ownership of the property. Mr. Boudreaux, Sr.'s later attempt to change the ownership of the property through a testamentary disposition to his son, Mr. Boudreaux, Jr. does not negate the prior transfer of the property as evidenced in the Counter Letter.

Furthermore, the court finds that Mrs. Sennett and Mr. Boudreaux, Sr.'s actions over a span of several years following the execution of the Counter Letter evidences their understanding that in fact, Mrs. Sennett was the true owner of the property. She continued to live in the home even after she remarried, her husband and his co-workers gutted the home after it was flooded, and she made various payments on the mortgage, insurance, and taxes.

This timely appeal followed. Boudreaux Junior raises three assignments of error: 1) the district court erred in declaring Mrs. Sennett the owner of the Property pursuant to the Counter Letter despite the undisputed fact that she failed to perform her obligation pursuant to the Counter Letter; 2) the district court erred in considering parol evidence in the interpretation of a clear and unambiguous terms of the Counter Letter, containing the obligation that "all payments on said mortgage will be paid by Rosalind Diggs Brooks"; and 3) the district court erred in considering only certain parol evidence testimony at trial regarding Mrs. Sennett's

understanding of the contract, rather than her unmistakable admission at trial that she understood that she was obligated to make all of the mortgage payments pursuant to the Counter Letter.

**Standard of Review**

A counter letter is a contract between a record owner and non-record owner whereby the record owner recognizes the true ownership interest of the non-record owner; thus, the rules of contract interpretation apply when reviewing a counter letter. *Dawsey v. Gruber*, 94-1466, p. 3 (La.App. 4 Cir. 7/1/94), 647 So. 2d 1084, 1086 (La.1994). Appellate courts review counter letters under the *de novo* standard of review because said matters require the interpretation of contractual provisions. *6126, L.L.C. v. Strauss*, 13-0853, p. 13 (La. App. 4 Cir. 12/4/13), 131 So. 3d 92, 101.

The Louisiana Civil Code contains instructions regarding the proper method of contractual interpretation in arts. 2045 to 2057. *Heard, McElroy & Vestal, L.L.C. v. Schmidt*, 22-0221, p. 10 (La. App. 4 Cir. 9/21/22), 349 So. 3d 663, 670, *writ denied*, 22-01571 (La. 1/18/23), 353 So. 3d 725. Louisiana Civil Code article 2045 sets forth that "the judiciary's task in resolving a contractual interpretation dispute is to determine the parties' common intent." *Id*. Moreover, La. Civ. Code art. 2046 states "[w]hen the words of a contract are clear and explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id*.

Furthermore, Louisiana jurisprudence has established that "the threshold inquiry in resolving an issue of contractual interpretation is whether the words and provisions of the contract are ambiguous." *Id.,* 22-0221, p. 9, 349 So. 3d at 670. "A contract is ambiguous when, inter alia, its 'written terms are susceptible to

more than one interpretation,' when 'there is uncertainty as to its provisions,' or when 'the parties' intent cannot be ascertained from the language used.' " *Id.,* 22-0221, p. 10, 349 So. 3d at 670 (quoting *Greenwood 950, L.L.C. v. Chesapeake La., L.P.,* 683 F.3d 666, 668 (5th Cir. 2012)).

This Court has further explained the steps an appellate court is bound to follow when interpreting contractual provisions:

> When the words and provisions of the contract are found to be clear and explicit (unambiguous), no extrinsic evidence can be introduced. *Frischhertz Elec. v. Housing Auth.,* 534 So.2d 1310, 1312 (La. App. 4th Cir. 1988). When a contract is unambiguous, "[a] court has no authority to reach beyond the four corners of the document." *Huggs, Inc. v. LPC Energy, Inc.,* 889 F.2d 649, 653 (5th Cir. 1989). Conversely, when a contract is ambiguous, the use of extrinsic evidence, including expert testimony, is proper. *Frischhertz Elec.,* 534 So.2d at 1314.

*Id.*

In light of the foregoing, we find that the *de novo* standard of review is applicable to the terms of the Counter Letter.

**The Counter Letter**

In his first assignment of error, Boudreaux Junior asserts that the district court erred in finding that Mrs. Sennett is the owner of the Property because: 1) the district court improperly applied the law of contracts to the Counter Letter, which is not the standard counter letter; and 2) Mrs. Sennett breached her obligation to pay all the mortgage payments, as required by the Counter Letter.

Boudreaux Junior contends that while the district court correctly recognized that the Counter Letter is a contract, the Court failed to consider that the substance of the Counter Letter demonstrates "key differences from the counter letters

considered in the decisions cited by the Trial Court in its July 15, 2022 Reasons for Judgment." Boudreaux Junior specifically avers that the district court erroneously relied upon *Strauss* in determining the nature of the Counter Letter because its terms place a "future-oriented binding obligation" upon Mrs. Sennett that she did not fulfill. Thus, he asserts that the Counter Letter should be dissolved and/or is unenforceable under Louisiana contract law jurisprudence.

In *Strauss*, two condominium unit owners in a three-unit building learned that the owner of the third unit, Unit B, had executed both a counter letter— recognizing her son as having an undivided ownership interest in the unit— and an act of donation of the unit to her daughter-in-law. 13-0853, p. 1, 131 So. 3d at 95. The condominium's governing declaration, however, conferred a right of redemption to the condominium unit owners whenever a unit owner sells her or his unit without first offering the remaining two unit owners a right of first refusal on the purchase. Consequently, the two condominium unit owners ("the plaintiffs") filed suit seeking a declaratory judgment, specific performance, breach of contract, and partition against the third unit owner, her son, and her daughter-in-law (collectively referred to as "the defendants"), who in turn filed a reconventional demand seeking declarations. *Id.*

Ruling on the parties cross motions for summary judgment, the district court held that the donation was valid, but it found the plaintiffs "were entitled to exercise the right of redemption by paying $500,000 for the 48.2% interest on account of the counter letter." The Court further reserved unto the parties the right to partition Unit B at a later time, and deferred ruling on the claims set out in the defendants' reconventional demand. The defendants appealed. *Id.*, 13-0853, pp. 1-2, 131 So. 3d at 95.

Relying upon the Louisiana Supreme Court's holdings in *Peterson v. Moresi*, 186 So. 737, 739 (La. 1939), where the Supreme Court determined that a counter letter was "neither a sale nor an offer to sell" and "does not purport to be a transfer of title," this Court held that the counter letter at issue recognized the ownership interests in the property at the time of its execution. *Id*., 13-0853, p. 19, 131 So. 3d at 104. The *Strauss* Court rationalized that the counter letter at issue was similar to the counter letter at issue in *Peterson,* in that both counter letters were an acknowledgement of "a state of affairs already established between the signatories;" therefore, the counter letters "[did] not secretly convey a property interest or evince a promise to convey, in exchange for consideration, a property interest at some future time." *Id*. This Court found that the defendant unit owner's execution of a counter letter did not trigger the right of first refusal under the condominium declaration. *Id.*

Boudreaux Junior attempts to distinguish *Strauss* from the facts of the instant matter asserting that the Counter Letter in this matter differs from the one in *Strauss* because in addition to addressing the "state of affairs already established between the signatories," the Counter Letter here "explicitly and indisputably imposes a future obligation" on Mrs. Sennett that she will make all mortgage payments. "Such a future obligation cannot be part of the "state of affairs already established" between her and Mr. Boudreaux.

We disagree. The district court's application of *Strauss*' holdings in this matter is correct because the definition of a counter letter in *Strauss* comports with the wording of the Counter Letter in the matter *sub judice*, acknowledging Mrs. Sennett has always been the owner of the Property. The wording of the Counter Letter does not include a statement that Mr. Boudreaux will convey ownership of

the Property to her at a later time after she has paid off the mortgage,[7] nor does it reflect that Mrs. Sennett undertook a future or conditional obligation.

Boudreaux Junior asserts that the evidence adduced at trial showed that Mrs. Sennett made *de minimis* payments on the mortgages, as opposed to Mr. Boudreaux, in whose name approximately $138,000 worth of payments were made. He contends that because she failed to fulfill her conditional obligation under the Counter Letter, Mr. Boudreaux's obligations, including transferring ownership to her, never came into existence.

The Louisiana Civil Code defines a conditional obligation as an obligation "dependent on an uncertain event." La. Civ. Code art. 1767. Article 1767 further provides:

> If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.

Boudreaux Junior contends that the uncertain event here is that when Mrs. Sennett completed making all of the mortgage payments Mr. Boudreaux's obligation to transfer ownership to her would be triggered. He maintains that pursuant to La. Civ. Code art. 2013, Mr. Boudreaux and/or he is entitled to judicial dissolution of the contract or that it be dissolved as a result of Mrs. Sennett's failure to perform her obligation.

The Counter Letter does not contain such a suspensive condition, but it does express Mr. Boudreaux's unequivocal declaration that he purchased the Property for Mrs. Sennett with funds she provided to him for the sale. Indeed, the record

---

[7] As noted above, there were two mortgages on the Property. The initial mortgage was with Johnson Mortgage Corporation and it was the mortgagee when the Counter Letter was executed. When the Property was refinanced, Bank One became the new mortgagee.

contains a cashier's check from her, dated May 26, 1995, issued to the company that listed the Property for sale, Re-Max Real Estate, LLC. The Counter Letter further details Mr. Boudreaux's declaration that he was named as a vendee in an August 1, 1995 Act of Sale for the Property that was sold for the sum of $89,000, for which he executed a mortgage in favor of Johnson Mortgage Corporation.

As noted above, Mr. Boudreaux expressed in the Counter Letter that he did not have an interest in the Property:

> That in truth and in fact appearer has no interest in said property; that the same was purchased by him for the account of Rosalind Diggs Brooks, and with sums furnished to appearer by the said Rosalind Diggs Brooks, and that he will execute in favor of said Rosalind Diggs Brooks, or her nominee, at such time as appearer is called upon so to do, an instrument transferring to the said Rosalind Diggs Brooks, all rights, title and interest that appearer has or may have in and to the said property.

Moreover, although the Counter Letter further states Mrs. Sennett is obligated to bind herself with Mr. Boudreaux to pay any unpaid portion of indebtedness due on the Property when notified by Mr. Boudreaux, there is no evidence that Mr. Boudreaux ever called upon her to do so. Nevertheless, that statement is not a conditional obligation upon which her ownership or recognition of her ownership is hinged under the terms of the Counter Letter.

The Counter Letter sets forth the ownership of the Property in clear and explicit terms. Consequently, based upon our *de novo* review, the district court did not err in holding that Mrs. Sennett owns the Property under the Counter Letter's terms.

## Parol Evidence

In Boudreaux Junior's remaining two assignments of error he asserts that the district court erred in relying upon parol evidence. Parol evidence becomes

admissible "to clarify" ambiguity "and to show the intention of the parties," when a contractual term is adjudged to be ambiguous. *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981). Courts look to parol evidence when the intent of the parties is unclear from the four corners of the document. *Carmichael v. Bass P'ship*, 11-845, p. 8 (La. App. 3 Cir. 2/1/12), 95 So. 3d 1069, 1075.

As discussed above, however, the terms of the Counter Letter are unambiguous. The intent of the parties is clear from its wording evidencing the true ownership of the Property. Therefore, pursuant to our *de novo* review, we pretermit discussion of the remaining assignments of error, finding that ownership of the Property was established under the terms of the Counter Letter and the applicable law.

Additionally, we note that Boudreaux Junior asserts that the district court erroneously relied on parol evidence because the district court referred to testimony made by Mrs. Sennett in its Reasons for Judgment. As previously stated in *Growe*, *supra*, however, Reasons for Judgment *are not* the Judgement itself, from which the appeal is being taken. Therefore, these assignments of error are also without merit.

## DECREE

For the foregoing reasons, the judgment of the district court, finding Rosalind Diggs Brooks Sennett to be the owner of 1915 South Dupre Street, is affirmed.

**AFFIRMED**
**OCTOBER 5, 2023**