T.C. Memo. 1996-176

UNITED STATES TAX COURT

STEPHEN D. PAHL AND LOUISE A. PAHL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7757-94.                    Filed April 11, 1996.

Petitioner husband (P), an attorney, claims that
he was not a shareholder in an S corporation organized
for the practice of law.  P did not report any of the
income and other items of the S corporation; he also
received an item of nonemployee compensation from the
S corporation, which he claimed he did report.
    1.  <u>Held</u>:  P was a shareholder of the S corporation
for the taxable year in issue and must report his pro
rata share of the income and other items of the
S corporation.
    2.  <u>Held</u>, <u>further</u>, P failed to report the
nonemployee compensation.
    3.  <u>Held</u>, <u>further</u>, R's imposition of an accuracy-
related penalty for negligence under sec. 6662, I.R.C.,
is sustained.

<u>Stephen D. Pahl</u>, for petitioners.

<u>Alan D. Hill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  For petitioners' taxable (calender) year 1990, respondent determined a deficiency in petitioners' Federal income tax liability of $28,694 and an accuracy-related penalty of $371.

The issues remaining for decision are:  (1) Whether, during 1990, petitioner husband was a shareholder in an S corporation so that petitioners are required to report his pro rata share of the corporation's income and certain other items, (2) whether petitioners failed to report $6,500 of nonemployee compensation received by petitioner husband from the S corporation in 1990, and (3) whether petitioners were negligent in filing their 1990 return.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

<u>Introduction</u>

Petitioners are husband and wife, who, for 1990, made a joint return of Federal income tax liability.  Petitioners resided in Los Altos Hills, California, at the time the petition in this case was filed.  Petitioner husband (hereafter, petitioner) is an attorney and member of the California bar.

Niesar Pahl

Niesar, Pahl, Cecchini & Gosselin, A Professional Corporation (Niesar Pahl), a California corporation, was organized in January 1987. Niesar Pahl was organized for the practice of law. On April 28, 1987, Niesar Pahl filed an election with the Internal Revenue Service to be treated as an S corporation for Federal income tax purposes. During 1990, and at all other times here relevant, Niesar Pahl's election to be treated as an S corporation remained effective. For 1990, Niesar Pahl computed its taxable income on the basis of a calender year.

Niesar Pahl was known as Niesar, Pahl, Cecchini & Gosselin, A Professional Corporation only from August 9, 1989, until sometime after June 30, 1990. Immediately prior to that period, Niesar Pahl was known as Niesar & Cecchini, and its only shareholders were Gerald V. Niesar and Garrett L. Cecchini. After that period, Niesar Pahl changed its name back to Niesar & Cecchini.

Petitioner's Association With Niesar Pahl

Prior to August 9, 1989, petitioner was not associated with Niesar Pahl. Sometime prior to August 9, 1989, petitioner and another lawyer, Thomas Gosselin (Gosselin), agreed to become shareholders, officers, and directors of Niesar Pahl as of August 9, 1989. Petitioner and Gosselin each agreed to become 25-percent shareholders of the firm by purchasing 1,000 shares of

stock in Niesar Pahl. Each agreed to pay one-quarter of the audited book value of the firm for his shares.

A meeting of the board of directors of Niesar Pahl (the board) was held on August 3, 1989 (the August 3 meeting). At the August 3 meeting, the board determined and resolved the following (as evidenced in the minutes of the August 3 meeting):

> WHEREAS, this Board of Directors has determined that the issuance of additional stock in the corporation would benefit the corporation; and
>
> WHEREAS, this Board has determined that Thomas M. Gosselin and Stephen D. Pahl are suitable shareholders whose participation would benefit the corporation and each is an active member of the California Bar; and
>
> NOW, THEREFORE, BE IT RESOLVED, that the corporation shall issue and sell to each of Thomas M. Gosselin and Stephen D. Pahl one thousand (1,000) shares of common stock, such action to take effect on August 9, 1989; and
>
> FURTHER RESOLVED, that the price to be paid by Messrs, Pahl and Gosselin for such shares shall be determined by an audit of this corporation's balance sheet as at July 31, 1989; and
>
> FURTHER RESOLVED, that each of Messrs. Pahl and Gosselin shall pay in cash, the amount equal to * * * [one-quarter] of the net worth of the corporation as determined by reference to such audited balance sheet as at July 31, 1989, as and for the total purchase price of said purchasers' [sic] shares of common stock.

At the August 3 meeting, the board also (1) elected petitioner a director of Niesar Pahl, effective August 9, 1989, and (2) authorized petitioner to negotiate an extension of credit to Niesar Pahl of $500,000 from Silicon Valley Bank (the bank) and to sign notes, agreements, or other documents as necessary to secure such credit.

## Petitioner's Noncompliance With the Agreement; Failure To Issue Shares

Petitioner never paid the price (1) called for in his agreement to purchase shares of Niesar Pahl and (2) as set forth in the above-quoted resolutions of the board. Niesar Pahl never issued any shares to petitioner. Moreover, Niesar Pahl never issued any shares to Gosselin or Gerald V. Niesar.

## State Filings

On August 29, 1989, Niesar Pahl filed a Certificate of Amendment of Articles of Incorporation (the Certificate of Amendment) with the secretary of state of the State of California. Thereby, the name of the corporation was changed to Niesar, Pahl, Cecchini & Gosselin, A Professional Corporation. A declaration of Garrett L. Cecchini, president, accompanying the Certificate of Amendment, executed under penalty of perjury, and dated August 9, 1989, states that petitioner is a shareholder, director, officer, and employee of Niesar Pahl. A guarantee accompanies the Certificate of Amendment and guarantees payment by Niesar Pahl of claims by clients for errors or omissions arising out of the practice of law. That guarantee is dated August 9, 1989, and is signed by petitioner as a shareholder of Niesar Pahl.

## Petitioner's Tenure With Niesar Pahl

On or about August 8, 1989, petitioner commenced employment with Niesar Pahl. Shortly thereafter, petitioner became president, managing partner, and chief financial officer of

Niesar Pahl. Petitioner's duties, among other things, included supervising Niesar Pahl's billing and payment procedures, establishing bank accounts, hiring and firing employees, and attending to the line of credit with the bank. Petitioner provided his own property as security for the line of credit with the bank.

No other employees of Niesar Pahl who were not shareholders received a compensation package equivalent to what petitioner received. Among other items of compensation, petitioner received an annual salary of $180,000 and an automobile allowance of $6,500 (the automobile allowance). Petitioner's receipt of the automobile allowance for 1990 is reflected on a Form 1099-MISC, Miscellaneous Income (the Form 1099), issued to petitioner for 1990 by Niesar Pahl and showing nonemployee compensation of $6,500.

Petitioner's Disassociation From Niesar Pahl

On June 30, 1990, petitioner and Gosselin left Niesar Pahl. Petitioner and Gosselin departed pursuant to an agreement (the separation agreement). Pursuant to the separation agreement, Niesar Pahl transferred to petitioner and Gosselin furniture and equipment with an agreed value of $34,875 and assigned accounts receivable to them in the amount of $135,000. In consideration thereof, among other things, Pahl and Gosselin assumed Niesar Pahl's credit line with the bank in the amount of $242,500, agreed that the June 30, 1990, employee payroll of $105,539 would

be funded from the credit line, and assumed certain accounts payable in the amount of $62,641.

Niesar Pahl's 1990 Return

For 1990, Niesar Pahl filed Form 1120S, U.S. Income Tax Return for an S Corporation (Niesar Pahl 1990 return).  Attached to the Niesar Pahl 1990 return are four Schedules K-1, Shareholder's Share of Income, Credits, Deductions, Etc.  One of those Schedules K-1 identifies petitioner as a shareholder (the petitioner K-1) and sets forth that petitioner's pro rata share of certain items is as follows:  (1) $95,969 of ordinary income from trade or business activities, (2) $236 of interest, and (3) $200 of charitable contributions.

Petitioners' 1990 Return

Petitioners made their joint return of income tax liability for 1990 on Form 1040, U.S. Individual Income Tax Return (petitioners' 1990 return).  Petitioners' 1990 return fails to include any of the items set forth on the petitioner K-1. Petitioners' 1990 return was prepared by a paid tax return preparer, Clifford Fenske, Jr.

OPINION

I.  Introduction

We must decide three issues.  First, we must decide whether, during 1990, petitioner husband (petitioner), an attorney, was a shareholder in Niesar, Pahl, Cecchini & Gosselin, A Professional Corporation (Niesar Pahl), a California corporation providing

legal services. If he was a shareholder in Niesar Pahl, then petitioners must take account of petitioner's pro rata share of Niesar Pahl's income and certain other items. Second, we must determine whether petitioners failed to report an automobile allowance in the amount of $6,500 received by petitioner from Niesar Pahl in 1990. Third, we must decide whether, in failing to report such automobile allowance, petitioners were negligent.

II. Was Petitioner a Shareholder In Niesar Pahl?

Section 1366 requires a shareholder of an S corporation to include in his gross income his pro rata share of the corporation's items of income and deduction. A shareholder of an S corporation must include those items in his gross income in his taxable year in which the taxable year of the S corporation ends. Sec. 1366(a).

Courts look to beneficial ownership, and not merely to legal title, in order to determine whether a taxpayer is a shareholder of a corporation for Federal income tax purposes: "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed--the actual benefit for which the tax is paid." Frank Lyon Co. v. United States, 435 U.S. 561, 572 (1978) (quoting Corliss v. Bowers, 281 U.S. 376, 378 (1930)). We have described in the following terms the inquiry necessary to determine whether, by purchase, an individual has become the owner of shares of stock of a corporation.

> A court must consider not only when the bare legal
> title passed but also when the benefits and burdens of
> the property, or the incidents of ownership were
> acquired or disposed of in a closed transaction.  In
> deciding the question, the court looks to that party to
> the transaction who has the greatest number of
> attributes of ownership.  A court should look to
> practicalities, disregarding merely formal and not
> useful rights and attributes.  If it is found from all
> the facts and surrounding circumstances that the
> parties intended an agreement to result in the sale of
> property, and the agreement transfers substantially all
> the accouterments of ownership, the transaction will be
> treated as a sale even though the parties intended the
> legal title should not pass until later.  Since courts
> cannot successfully conjecture as to the subjective
> intent of the parties, the objective evidence of intent
> provided by the parties' overt acts must be relied
> upon.  [Pacific Coast Music Jobbers, Inc. v.
> Commissioner, 55 T.C. 866 (1971) (citations omitted),
> affd. 457 F.2d 1165 (5th Cir. 1972).]

Although the tax consequences of owning shares of stock in

an S corporation are quite different than the tax consequences of

owning shares of stock in a corporation subject to tax under

subchapter C of the Internal Revenue Code, we must still look to

beneficial ownership in order to determine whether a taxpayer is

a shareholder of an S corporation.  Hoffman v. Commissioner,

47 T.C. 218, 233 (1966) ("Our conclusion that beneficial

ownership of the stock, as opposed to technical legal title

thereto, is critical in determining who is a shareholder [of an

S corporation], is supported by * * * the general legislative

purpose underlying subchapter S."), affd. 391 F.2d 930 (5th Cir.

1968) (fn. ref. omitted).

Petitioners' argument is straightforward:  Unless and until

petitioner paid for his stock, his agreement with Niesar Pahl was

executory; since he never paid for his stock, he never became a shareholder; since he never was a shareholder, he need not report a pro rata share of Niesar Pahl's income and other items.

We have found that petitioner neither made the payment contemplated in his agreement to become a shareholder of Niesar Pahl nor did he receive any shares of the corporation. To that extent, the terms of his agreement with Niesar Pahl remained unperformed. Nevertheless, petitioners concede: "there is no question that one can own an interest in a corporation without holding any physical evidence thereof, Richardson v. Shaw, 209 U.S. 365 (1908)". Petitioners also concede that one can own shares in a corporation before they are fully paid for: "Whether PAHL acquired sufficient rights [of] ownership to make him the owner of the stock depended upon the intent of the parties as evidenced by their contract." While it is no doubt true that payment may be a precondition to obtaining ownership of shares in some circumstances, see, e.g., Armstrong v. Commissioner, 6 T.C. 1166 (1946) (contract to purchase shares executory until delivery of shares and payment therefor; long-term capital gains period did not start to run until delivery), affd. 162 F.2d 199 (3d Cir. 1947), we do not believe that was the case here.

Clearly, Niesar Pahl did not treat payment as a precondition to petitioner's becoming a shareholder. The corporation caused its name to be changed to Niesar, Pahl, Cecchini & Gosselin, A Professional Corporation. The Certificate of Amendment filed

with the California Secretary of State has attached to it a
declaration by Garrett L. Cecchini, president of Niesar Pahl,
which recites that petitioner is a shareholder.[1]  On a schedule

------------------------

[1]    At trial, petitioners objected to respondent's Exhibit O,
which consists of the Certificate of Amendment and two
attachments, the declaration of Garrett L. Cecchini and the
guarantee signed by petitioner (the guarantee).  We overruled
that objection, but petitioners renew their objection on brief.
Because of the importance petitioners attach to their objection,
we shall elaborate on our reasons for overruling petitioners'
objection.  Petitioners' objection is based "on the grounds of
Best Evidence".  Petitioners claim that, at trial, respondent,
promised to provide an original or certified copy of Exhibit O
and failed to do so.  We have examined the transcript of the
trial and, although we did hold the record open so that
respondent could submit certain documents, we cannot conclude
that respondent promised to submit an original or certified copy
of Exhibit O.  In any event, we do not believe that an original
or certified copy is necessary to satisfy the Federal Rules of
Evidence.  We need not be concerned with Fed. R. Evid. 1005,
which deals with public records.  Respondent is not attempting to
establish the contents of the Certificate of Amendment as a
public record, but rather she is trying to prove the contents of
the Certificate of Amendment and attached documents regardless of
whether or not they are public records.  The rationale behind
Fed. R. Evid. 1005 is inapplicable, and the rule does not apply.
United States v. Childs, 5 F.3d 1328, 1335 (9th Cir. 1993).

    Exhibit O was proffered to prove that petitioner was a
shareholder of Niesar Pahl.  Fed. R. Evid. 1003 provides that "A
duplicate is admissible to the same extent as an original unless
(1) a genuine question is raised as to the authenticity of the
original or (2) in the circumstances it would be unfair to admit
the duplicate in lieu of the original."  At trial, petitioner as
much as alleged that his signature had been forged to the
guarantee.  Nevertheless, Gerald V. Niesar (Niesar), secretary of
Niesar Pahl testified that he prepared the guarantee, watched
petitioner sign it, and recognized his signature.  Fed. R. Evid.
901(b)(1) and (2) provides that a document can be authenticated
by the testimony of a witness with knowledge and nonexpert
testimony is sufficient as to the genuiness of handwriting.
Although a coworker may testify as to the handwriting of an
employee if he had the opportunity to observe it, United States
v. Tipton, 964 F.2d 650 (7th Cir. 1992), we need not concern
ourselves with Niesar's familiarity with petitioner's signature,
(continued...)

(the petitioner K-1) attached to the Niesar Pahl 1990 return, petitioner is identified as a shareholder of the corporation. Petitioner is likewise identified as a shareholder on a Schedule K-1 attached to Niesar Pahl's 1989 income tax return. Petitioner's compensation package resembled that of a shareholder-employee, not a nonshareholder-employee. Niesar Pahl was engaged in a service business, the practice of law, and, as law firms go, it was not particularly large. Petitioner's positions, as president, managing partner, and chief financial officer, strike us as typical of an owner (partner) or principal, rather than as a mere employee.

Indeed, the minutes of the August 3 meeting of the board of Niesar Pahl state that the corporation "shall issue and sell to * * * [petitioner] one thousand (1,000) shares of common stock, <u>such action to take effect on August 9, 1989</u>". (Emphasis added.) There is no explicit date for satisfaction of the price term:

> the price to be paid by * * * [petitioner] for such shares shall be determined by an audit of the corporation's balance sheet as at July 31, 1989; and * * * [petitioner] shall pay in cash, the amount equal to * * * [one-quarter] of the net worth of the corporation as determined by reference to such audited balance sheet as at July 31, 1989, as and for the total purchase price of said purchasers' [sic] 1000 shares of common stock.

---

[1](...continued)
since Niesar testified that he actually saw Pahl sign the guarantee. We disbelieve petitioner's testimony to the contrary. The requirements of Fed. R. Evid. 1003 are met, and Exhibit O was properly received into evidence.

Apparently, the board understood that petitioner would become a shareholder on August 9, 1989, and would pay for his shares when the price could be determined by an audit of the corporation's balance sheet as of July 31, 1989. While it is true that no shares were issued to petitioner on August 9, 1989, we do not find that dispositive: There is no evidence that Niesar Pahl ever issued shares to any shareholder. We believe that the board intended petitioner to become a shareholder of Niesar Pahl on August 9, 1989, notwithstanding that he may not have then paid for his shares.

Petitioner's testimony that he was not a shareholder of Niesar Pahl was unconvincing. Petitioner's actions were those of an owner at all times during his tenure with Niesar Pahl. Moreover, the guarantee that accompanied the Certificate of Amendment filed when Niesar Pahl changed its name is signed by petitioner as a shareholder. We are convinced that petitioner understood, and intended, that he would become a shareholder of Niesar Pahl on or about August 9, 1989.

We find that petitioner became a shareholder of Niesar Pahl on or about August 9, 1989, and remained a shareholder until he left Niesar Pahl on June 30, 1990. Petitioners have not argued that, if we find that petitioner was a shareholder of Niesar Pahl during 1990, respondent erred in increasing petitioners' income on account thereof in the amounts set forth in respondent's notice of deficiency. Accordingly, we sustain respondent's

determination of a deficiency to the extent attributable to petitioner's pro rata share of the income and other items of Niesar Pahl for 1990.

III.  Automobile Allowance

Respondent determined a deficiency based, in part, on her adjustment increasing petitioners' gross income on account of the omission of nonemployee compensation of $6,500 received by petitioner from Niesar Pahl.  Petitioner did receive $6,500 from Niesar Pahl as an automobile allowance, which amount is reflected on the Form 1099 issued to petitioner by Niesar Pahl.  The automobile allowance is the nonemployee compensation in question. Petitioner testified that the automobile allowance is reflected on Schedule C, Profit or Loss From Business (Schedule C), attached to petitioners' 1990 return.  Petitioner's testimony was unconvincing.  Schedule C states that it relates to "Attorney Legal Service-Leasing", and it shows gross receipts of $8,530. We fail to see the connection between the automobile allowance and any attorney legal service-leasing business of petitioner's. Petitioners' 1990 return was prepared by a paid tax return preparer, Clifford Fenske, Jr.  Petitioners neither called Mr. Fenske to testify nor showed that he was unavailable to testify. Mr. Fenske may have had working papers or other knowledge that would have explained the nature of the gross receipts of $8,530 reported on Schedule C.  We infer from his failure to testify that his testimony would have been negative to petitioner.  McKay

v. Commissioner, 886 F.2d 1237, 1238 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We find that petitioner omitted the automobile allowance, in the amount of $6,500, from the petitioners' 1990 return, and we sustain respondent's determination of a deficiency to the extent that it relates to such omission.

IV. Negligence

Section 6662 provides for an accuracy-related penalty in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations. Respondent determined a section 6662 penalty against petitioners for their negligence in omitting from gross income the nonemployee compensation discussed above. Negligence has been defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under like circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). In the petition, petitioners assign error to respondent's determination of a section 6662 penalty. However, petitioners do not aver any specific facts in support of their assignment of error. On brief, petitioners propose no findings of fact specifically relating to the penalty, nor do they set forth any arguments with regard thereto. We assume that, in defense to respondent's determination of a penalty, petitioners rely exclusively on the assumption that we shall determine no

deficiency with respect to the item of nonemployee compensation. We have determined such a deficiency. Petitioners have failed to prove that they were not negligent in omitting the nonemployee compensation from gross income. Rule 142(a). Respondent's determination of a section 6662 penalty is therefore sustained.

<u>Decision will be entered</u>
<u>for respondent</u>.